**Kristin K. MOFFITT, Plaintiff,**

v.

**ILLINOIS STATE BOARD OF EDUCATION, Defendant.**

No. 96–3067.

United States District Court, C.D. Illinois, Springfield Division.

Feb. 9, 1999.

Patricia L. Hayes, Springfield, IL, for plaintiff.

Deborah L. Barnes, Steven Matrisch, Springfield, IL, for defendant.

## OPINION

RICHARD MILLS, District Judge.

Plaintiff failed to appear for jury trial.

The Court, the jury, and the Defendant were ready to proceed.

Plaintiff's counsel said she could not proceed without her client.

Plaintiff's fifth motion for continuance is denied.

Defendant's motion for involuntary dismissal is allowed.

### I. Background

#### A. Procedural History

Plaintiff Kristin Moffitt ("Moffitt") filed this action against her former employer, the Illinois State Board of Education ("ISBE"), alleging that she was discriminated against because of her pregnancy, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(k). Moffitt initially filed the complaint

on March 15, 1996. The Court entered a scheduling order on October 11, 1996, setting deadlines for discovery, the filing of dispositive motions, and a date for the final pretrial conference. No motions were to be filed after the final pretrial conference. Subsequently, the parties requested an amendment to the scheduling order, and the Court extended all the deadlines and reset the final pretrial conference to January 20, 1998.

Moffitt then requested a continuance of the final pretrial conference in order to finish discovery. The Court allowed the motion and rescheduled the final pretrial conference and trial to February 17, 1998, and March 3, 1998, respectively. Due to pending motions, the Court *sua sponte* rescheduled the final pretrial conference to March 31, 1998. On March 5, 1998, Moffitt filed another motion to continue stating that her counsel, Ms. Patricia Hayes ("Ms. Hayes"), was leaving for vacation a day after the final pretrial conference, and would be out of town until April 17, 1998. The Court denied her motion because the case's order in the Court's trailing trial calendar made it highly unlikely that it would proceed to trial in April.

On March 31, 1998, the parties met for the final pretrial conference. In order to expedite the case, the Court again reminded the parties not to file any pretrial motions after March 31, 1998. On April 1, 1998, the Court entered the final pretrial order and the case was supposed to be ready for trial.

On May 22, 1998, Ms. Hayes disobeyed this Court's order and filed a Motion in Limine past the March 31st deadline. The Court nevertheless considered the motion. In her motion, Ms. Hayes sought to exclude documents that were also listed in her client's own exhibit list.[1] The Court vacated her motion and allowed her to refile her motion. The Court directed her to be more specific on her objections and to explain why the documents she sought to exclude were also listed in her own exhibit list. Counsel eventually complied with the Court's order, and the Court ruled on the motion in limine on November 19, 1998.

---

1. The motion, by all means, was not a paragon of good legal writing. Counsel did not specify

which exhibits violated which rule of evidence, and why it violated the rule.

On December 29, 1998, the Court contacted the attorneys for both parties by phone. During the conversations, both parties consented to having U.S. Magistrate Judge Charles Evans preside over the selection of the jury. The parties were also notified that the jury selection was set for January 20, 1999, and trial was set for January 26, 1999 at 10 a.m. Both parties indicated that they had no conflicts with these firm dates.

## B. Moffitt's Motions to Continue

On January 14, 1999, three weeks after the Court set the firm date for jury selection and trial, Ms. Hayes filed the first of five motions to continue. In her first motion to continue, Ms. Hayes requested a continuance because her client allegedly had disappeared and could not be located. Ms. Hayes attached an affidavit of Darlene Hutchins, her client's mother, to the motion. Mrs. Hutchins indicated that Moffitt left home on January 1, 1999, and did not return home. Moffitt called Hutchins on January 7, 1999 and told her that she was "being held against her will." Hutchins further stated that she contacted the local authorities and was in the process of filing a missing person's report.

ISBE objected to the continuance and argued that there was insufficient evidence to suggest that Moffitt was being held captive. Moffitt's counsel, Ms. Hayes, did not attach a report from a law enforcement agency indicating that Moffitt was being held against her will, nor did she attach a copy of the missing person's report. The Court denied her motion because there was insufficient evidence to suggest that Moffitt was in fact a "victim of foul play." *See* Affidavit, ¶ 11.

Ms. Hayes then filed another motion to continue on January 19, 1999, the eve of jury selection, stating that although Moffitt returned home safely, she was "very ill." [2]

Due to her illness, Moffitt was allegedly in a hospital in Bloomington, Illinois, and that she would be unavailable during the week of trial. ISBE again objected to the continuance, stating that there was no indication what Moffitt was being hospitalized for, nor an affidavit from a doctor indicating that Moffitt was in fact hospitalized. Next, Ms. Hayes did not indicate whether she attempted to contact Moffitt's doctor, nor did she indicate that the hospitalization was elective, in which case Moffitt should have planned it another time. ISBE also argued that Moffitt's representations to her own counsel were now suspect, in light of what she told Ms. Hayes regarding her disappearance. This Court agreed and denied the second motion to continue.

Moffitt did not appear for jury selection on January 20, 1999. Ms. Hayes then made an oral motion to continue. Ms. Hayes represented to the Court that this was her first request for a continuance,[3] and that she was prepared to proceed to trial in November of 1998,[4] when the Court granted ISBE a continuance to substitute counsel.[5] ISBE again objected to the continuance. Ms. Hayes then presented testimony of Darlene Hutchins, the Plaintiff's mother. Ms. Hutchins testified that Moffitt voluntarily left home on January 1, 1999, and that she returned home on the evening of January 14, 1999. She once again stated that Moffitt was "very ill" when she returned home.

The Court inquired as to why Moffitt was hospitalized. Ms. Hutchins testified that Moffitt was being treated for drug addiction. She had a problem with alcohol and drugs in the past, and had sought treatment from local drug treatment programs in Springfield, Illinois, but those programs were unsuccessful. Thus, Moffitt chose a drug rehabilitation program in Peoria, Illinois, and voluntarily admitted herself into the pro-

**2.** It was determined later that Moffitt actually returned home on January 14, 1999, six days before jury selection.

**3.** This was not true. She filed 3 motions to continue before her oral motion to continue the jury trial.

**4.** This discredits Ms. Hayes' stated reason for the continuance in her motion. In her motion, she stated that she needed a continuance because her client "has been unable to assist [her] in preparing for trial...." The Court notes with curiosity why she would need a continuance to prepare for trial when she was supposedly ready for trial back in November of 1998.

**5.** The assistant Attorney General of Illinois that was assigned to the case left the AG's office.

gram.[6] The Peoria program would last 21 days if Plaintiff remained in the program until its end. In addition, Mrs. Hutchins testified that Moffitt did not open her mail regularly, and consequently, Moffitt did not know that her case was set for trial on January 26, 1999.

Based on these facts, Magistrate Judge Evans denied her motion to continue to the extent it pertained to the jury selection. Accordingly, the jury was selected without Moffitt being in attendance.

Ms. Hayes filed another motion to continue on January 22, 1999. With her fourth motion, Ms. Hayes attached a letter from Dr. James Bowman at the Proctor Hospital in Peoria, Illinois. The letter indicated that Moffitt was admitted into the Addiction Recovery Center on January 19, 1999, and that her anticipated length of stay was 21 days. The four-sentence letter was extremely uninformative: it failed to indicate Dr. Bowman's position in the hospital; whether Moffitt was on an inpatient or outpatient basis; the seriousness of Moffitt's illness; and most importantly, whether Moffitt could be absent from the program to testify at her trial. ISBE again objected to the motion to continue and filed a motion for involuntary dismissal pursuant to Fed.R.Civ.P. 41(b). The Court denied both motions.

Moffitt was absent from the courtroom on the morning of trial. Before opening statements, Ms. Hayes requested that the Court entertain another motion to continue. The Court directed the jurors back to the jury room and heard arguments on the motion. Ms. Hayes made several arguments in support of the motion: first, she argued that her client suffers from a qualified disability under the Americans with Disabilities Act ("ADA"), and asked the Court to make a "reasonable accommodation" for her client.[7] Second, Ms. Hayes argued that it would be unreasonable to not continue the trial since Moffitt did not know about the trial until January 19, 1999, when Ms. Hayes informed her. Third, Ms. Hayes submitted another

letter from Dr. Bowman that was written on the morning of January 26, 1999. The letter confirmed that Moffitt suffered from Cocaine and Alcohol Dependence, and had a Depressive Disorder. He also recommended that Moffitt continue in treatment.[8] Lastly, Ms. Hayes stated that because she could not get in touch with her client, she was unable to prepare for trial.

ISBE objected once again to the continuance, and it renewed its motion for involuntary dismissal pursuant to Fed.R.Civ.P. 41(b). Regarding the motion to continue, ISBE correctly noted that the ADA and the FMLA applied only to employers and not the courts. Second, since Ms. Hayes could have picked up the phone and called her client to notify her of the trial date, lack of notice was no excuse.

The Court once again denied the motion to continue. The Court then inquired whether Ms. Hayes was ready to proceed with the case. Ms. Hayes replied that she could not proceed without her client's testimony. Upon further examination, the Court discovered that approximately 10 depositions were taken, including Kristin Moffitt's deposition. Moreover, Ms. Hayes listed 87 people on her witness list, and 129 exhibits in her exhibit list. In light of such voluminous evidence, the Court advised Ms. Hayes that she should proceed by calling other witnesses and/or reading her client's deposition into the record. Ms. Hayes nevertheless stated that she had no other witnesses ready and therefore, she was not ready to proceed.

ISBE then renewed its motion to dismiss under Fed.R.Civ.P. 41(b).

## II. Analysis

Rule 41(b) of the Federal Rules of Civil Procedure states:

> Involuntary Dismissal: Effect thereof. For failure of the plaintiff to prosecute or to comply with these rules or any other order of the court, a defendant may move

---

6. Plaintiff first went to a program in Bloomington, Illinois, but was denied admission.

7. She also relied on the Family Medical Leave Act ("FMLA").

8. The three sentence letter did not indicate how serious Plaintiff's condition was, nor did it indicate whether or not the Plaintiff could be absent from the program to testify at her trial.

for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule ... operates as an adjudication upon the merits.

■ When deciding whether to dismiss a suit for failure to prosecute, the Court should, ideally, consider the following factors: (1)the frequency and magnitude of the plaintiff's failures to comply with deadlines for the prosecution of the suit; (2) the apportion of responsibility for failure between counsel and plaintiff; (3) appropriateness of sanctioning counsel rather than plaintiff; (4) the effect of the failure in taxing the Court's time and disrupting calendar to prejudice other litigants; (5) prejudice to defendant from dilatory conduct; (6) probable merits of suit; (7) and consequences of dismissal. *See Ball v. City of Chicago*, 2 F.3d 752, 759–60 (7th Cir.1993).[9] Keeping these factors in mind, the Court now considers Defendant's Motion to Dismiss under Rule 41(b).

■ The procedural history of this case suggests that the Plaintiff's counsel does not respect Court-imposed deadlines and dates. As noted before, she ignored the Court's scheduling order by filing a motion in limine a month *after* the final pretrial conference. Most importantly, hoping that the Court would grant her a continuance, she failed to proceed with the case on the date of trial by not calling other witnesses to testify, despite the fact that she listed 87 witnesses on her witness list and 129 exhibits on her exhibit list. She could have easily called one of her other witnesses and let her client testify at a later date. Morever, she could have read her client's deposition into the record if necessary. Despite these alternatives, counsel stated that she absolutely could not proceed without her client being present in the courtroom.[10] As a matter of fact, she brought with her no other witnesses, nor exhibits. The record does not reflect that counsel even attempted to subpoena her witnesses. Un-

der these circumstances, the Court finds that counsel failed to exercise professional judgment in not preparing to proceed even in the absence of her client.

■ All the blame should not fall on counsel, however. By her misfeasance and nonfeasance, the Plaintiff herself did not exhibit a desire to proceed to trial. Although she did not explicitly communicate her intent not to prosecute, the Court can infer lack of intent to prosecute a case from Plaintiff's failure to appear at trial. *See GCIU Employer Retirement Fund v. Chicago Tribune Co.*, 8 F.3d 1195, 1199 (7th Cir.1993) (citing *Zaddack v. A.B. Dick Co.*, 773 F.2d 147 (7th Cir.1985)); *See also, Dickerson v. Board. of Educ. of Ford Heights, Ill.*, 32 F.3d 1114, 1117 (7th Cir.1994) ("A court is permitted to infer a lack of intent to prosecute a case from a pattern of failure to meet court-imposed deadlines.") (citations omitted). Plaintiff's behavior suggests that she did not view her case as being important. First, she fails to check her mail and inform herself as to the firm dates set by this Court. Second, she failed to notify her retained counsel and this Court regarding her illness and desire to seek treatment. Had she notified her counsel and this Court her desire to seek medical treatment earlier, the Court would have accommodated her in every way possible. Third, it appears she made no effort whatsoever to attend any of the proceedings set by this Court. She failed to file any affidavits from her doctor stating that the Plaintiff physically could not attend the trial to testify. Instead, the evidence suggests that she *voluntarily* made herself unavailable by checking into the drug treatment program. The Plaintiff's misfeasance were accumulated by her attorney's lack of preparation and professional judgment. That is no excuse, however, because the Plaintiff generally must bear the burden of the actions or inactions taken by her attorney. *See Link v. Wabash Railroad Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (holding that petitioner must take responsibility for the con-

---

9. Although the cited case deals with *sua sponte* dismissals, as opposed to a motion by the defendant, the Court will apply a similar test.

10. One of her listed witnesses, Vivian Najim, Plaintiff's former supervisor, was present in the courtroom on the date of trial. Therefore, at least one witness was available.

duct of his attorney when he voluntarily chose the attorney as his representative).

■ The Plaintiff's and her counsel's request for a continuance fell on deaf ears due to a lack of credibility. First, regarding their motion to continue that was filed on January 14, 1999, there was no evidence to suggest that the Plaintiff was taken as a hostage. Even when she returned, the Plaintiff did not elaborate on her disappearance. Regarding her second motion, the Plaintiff was "less than forthright" as to her alleged illness. She did not *ab initio* notify the Court what illness she was suffering from, how serious her condition was, how long she needed for treatment, and whether she would be able to attend her trial. At the time the Court made the decision to deny the motion to continue, the Plaintiff failed to provide credible evidence that she could not attend her trial. Under such circumstances, a dismissal is proper. *See Johnson v. Kamminga*, 34 F.3d 466, 468 (7th Cir.1994) (affirming the district court's dismissal when the plaintiff was "less than forthright" in explaining his inability to attend trial).

The lack of credibility in the Plaintiff's reasons for continuance was further compounded by her lawyer's lack of credibility. First, Plaintiff's counsel misrepresented to the Court that she had not asked for a continuance before, when in fact she requested a continuance on several occasions prior to January 20, 1999.[11] Moreover, counsel stated in the motions to continue that she was not ready to proceed to trial because her client did not assist her in preparing her for trial. At the jury selection conference, however, counsel previously stated that she was ready to proceed to trial in November of 1998.

Given the lack of credibility of the Plaintiff and Plaintiff's attorney, the Court took all statements made by the Plaintiff with a "grain of salt." In addition, since both the attorney and her client were *in pari delicto*, the Court finds that merely sanctioning the attorney would not adequately address Plaintiff's failure to prosecute.

■ The Court notes that "there must be an explicit warning before the case is dismissed [for failure to prosecute]." *Ball*, 2 F.3d at 760. However, warnings are not necessary when "it is clear that counsel must have expected [her] actions (or inaction) to be answered with dismissal." *In re Bluestein & Co.*, 68 F.3d 1022, 1026 (7th Cir. 1995). The above-cited case is distinguishable on one significant respect; the cited case involved a *sua sponte* dismissal for failure to meet deadlines, while this case involves a motion by the Defendant when the Plaintiff failed to proceed on the day of trial. This distinction is important because "it is not unreasonable to treat a failure to attend trial more severely than a failure to comply with discovery orders in a timely fashion." *Johnson*, 34 F.3d at 469. Regardless of the distinction, the Court finds that warnings were unnecessary in this case. After the Court denied her motions to continue, counsel should have known that she would be expected to proceed. The jurors, the Court, and the Defendant were all ready to proceed. More importantly, Plaintiff and counsel should have expected a dismissal if they did not proceed to trial. The Defendant filed, and the Court initially denied, a motion to dismiss for failure to prosecute. The denial of the first motion should have at least "warned" the Plaintiff and counsel that the Court expected the parties to proceed to trial. It would be unreasonable to think that Plaintiff did not expect a possible dismissal if she did not proceed to trial. Therefore, the Court finds that an explicit warning was not necessary in this case.

This case is over two years old. It was one of the oldest civil cases pending in this Court. Due to the limited number of trial days available, continuing a trial after it has been assigned a firm date is extremely costly and inefficient. The financial costs of paying the jurors for their unused services, the cost of preparation for trial by the Court and the Defendant, and the opportunity cost of the foregone cases that could have been tried in lieu of Plaintiff's case adds up to be very costly for all parties involved. "And [at] this

---

11. *See* Plaintiff's Motion to Continue Pretrial filed on January 8, 1998; *See also*, Plaintiff's Motion to Continue Pretrial filed on February 9, 1998.

late stage, those costs fall increasingly on the public rather than the litigants." *Johnson*, 34 F.3d at 469. Not dismissing the suit and granting a continuance of this action would be penalizing the wrong party, mainly, the taxpayers, as well as the Defendant who came ready for trial.

*Ergo*, Defendant's oral motion to dismiss pursuant to Fed.R.Civ.P. 41(b) is ALLOWED. This suit is dismissed with prejudice.