In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1222

KRISTIN K. MOFFITT,

Plaintiff-Appellant,

v.

ILLINOIS STATE BOARD OF EDUCATION,

Defendant-Appellee.


Appeal from the United States District Court
for the Central District of Illinois.
No. 96 C 3067--Richard Mills, Judge.


Argued January 13, 2000--Decided January 9, 2001


Before BAUER, POSNER, and ROVNER, Circuit Judges.

ROVNER, Circuit Judge.  Pursuant to Fed. R. Civ. P. 41(b), the district court dismissed this employment discrimination case with prejudice after the plaintiff, who was hospitalized for drug and alcohol addiction, failed to appear for trial and her attorney announced that she was not prepared to go forward in her client's absence. Moffitt v. Illinois State Bd. of Educ., 184 F.R.D. 298 (C.D. Ill. 1999). The plaintiff appeals, contending that the district court abused its discretion in dismissing the case rather than granting her the continuance she requested./1 We affirm the dismissal of the case, because the plaintiff's counsel not only declined to present any evidence when the case was called for trial, but also failed to make a record as to why the case could not proceed in the plaintiff's absence.

I.

   Kristin Moffitt began work for the Illinois State Board of Education (the "Board") in 1990 as a confidential clerk in its personnel department. In 1992, she assumed additional responsibilities that allegedly warranted an upgrade in her job classification to that of a confidential secretary, the next highest level of responsibility and pay. In July 1992, Moffitt requested the "desk audit" that was a

prerequisite to a classification upgrade. In November 1992, one month after Moffitt informed the Board that she was pregnant, the Board denied her request for a desk audit.

Moffitt was on maternity leave from late February through mid-July of 1993. While she was on leave, the Board reassigned the additional duties that Moffitt had been handling to a new confidential secretary position. Moffitt interviewed for the new position, but the Board hired someone else to fill it. Consequently, when Moffitt returned from maternity leave, the added responsibilities that might have warranted an upgrade in her classification had been taken away from her position. In or around March of 1994, Moffitt transferred to a different department of the Board. She resigned from the Board's employ in July of 1994.

In March of 1996, Moffitt filed suit against the Board under Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e, alleging that the Board discriminated against her on the basis of her pregnancy when it chose not to promote her to the new position for a confidential secretary that had been created, in part, to handle some of the responsibilities she had been given prior to taking maternity leave. The Board answered the complaint two months later, and discovery commenced. On October 11, 1996, the district court entered an order giving the parties a year in which to complete their discovery. R. 7. After an extension of the discovery deadline, as well as the entry of an order granting Moffitt's motion to compel the production of certain documents that the Board regarded as confidential, discovery concluded at the end of January 1998.

The court conducted a final pre-trial conference on March 31, 1998, at which time the parties submitted their proposed pre-trial order. The court entered that order on the same day. The witness list that Moffitt included in that order identified more than 80 witnesses that she might call to testify and a total of 129 exhibits. R. 33, Exs. B, D.
Nearly nine months later, on December 29, 1998, the court set the case for trial. Jury selection was scheduled to take place before the magistrate judge beginning January 20, 1999, with the trial to commence on January 26 before the district judge.

On January 14, 1999, Moffitt filed the first of several motions to continue the trial date. R. 43. In that motion, Moffitt's counsel indicated that she was unable to contact her client. Attached to the motion was the affidavit of

Moffitt's mother, Darlene Hutchins, with whom Moffitt and her two small children resided. R. 43 Ex. A. Hutchins indicated that Moffitt had left home in Hutchins' car on January 1 and, as of January 14, had not returned. Hutchins averred that Moffitt had contacted her on January 7 and indicated that she was being held against her will; since that time, Hutchins had not heard from Moffitt. On January 8, Hutchins' car had been located by the Springfield police, occupied by two individuals whom Hutchins did not know. Hutchins believed that her daughter had been the victim of foul play, and had enlisted the aid of authorities in an effort to locate her.

On January 19, the district court denied the motion, believing that it would be "premature to continue the jury trial at this time." R. 45 at 2. "There is no evidence from law enforcement officers nor credible evidence from anywhere else to suggest that the Plaintiff is in fact a victim of foul play." Id.

On January 19, the same date that the court denied Moffitt's initial continuance motion, Moffitt filed a first supplemental motion to continue the trial. R. 46. In that motion, Moffitt's attorney indicated that her client had contacted her that day and informed her that she was hospitalized in Bloomington, Illinois and would remain so through the week of January 26. "Due to the foregoing," Moffitt's counsel stated, "Plaintiff has been unable to assist in the preparation of her case for trial and will be unable to attend the trial . . . ." Id. at 1. The district court denied this motion on the day it was filed. See id.

On January 20, when jury selection was to begin, Moffitt's counsel appeared before Magistrate Judge Evans and orally requested a continuance on the basis that Moffitt had been admitted into a drug and alcohol treatment program. Hutchins was present and testified in support of the motion. See R. 63. Hutchins indicated that after a two-week absence, her daughter had returned home several days earlier in a "very ill" state. Id. at 11. Hutchins had taken her daughter to a hospital in Bloomington on the previous day seeking treatment for her drug and alcohol addiction./2 The Bloomington hospital had been unable to admit Moffitt and instead, after assessing Moffitt, had sent her to an affiliated drug treatment program at a hospital in Peoria. Moffitt had voluntarily admitted herself to the Peoria hospital and, according to Hutchins, would be there for the next 18 to 21 days. Hutchins and Moffitt's counsel also indicated that Moffitt had been unaware, until the previous day, that her case

had been scheduled for trial in January, although her attorney had previously sent her correspondence notifying her of the trial date. According to Hutchins, Moffitt did not read her mail and "does not deal with anything." R. 63 at 18. Moffitt's attorney added that she had spoken with Moffitt on the previous day and that "she was not lucid." Id. at 17. "She is not herself at all. . . . She doesn't make sense when she tells you something. She is just not-- there is just something very wrong." Id. at 17-18. The defense opposed the continuance and asked that judgment be entered in the Board's favor. Judge Evans noted that he had been designated solely to handle jury selection, and he decided to proceed with that task. Id. at 21-22, 27-28. The jury was selected and empaneled later that same day.

On January 22, Moffitt filed a second supplemental motion to continue the trial date. R. 48. In that motion, Moffitt's counsel indicated that Moffitt would remain hospitalized for the next 21 days, that she had been unable to assist her attorney in preparation for the trial, that she would be "irreparably damaged" if her attorney were forced to proceed with the trial in her absence (id. at 2 para. 7), and that her hospitalization was necessary in order to return her to a condition in which she could participate in and assist with her trial. Attached to the motion was a letter from a physician at the hospital in Peoria confirming that Moffitt had been admitted to the hospital's addiction recovery center and that she was anticipated to remain there for 21 days. R. 48 Ex. A. He added, however, that "if Ms. Moffitt is making substantial progress in treatment, she may be discharged earlier to a less[e]r level of care." Id.

The district court denied the motion on January 25 with a written order. R. 53. Citing our opinion in Schneider Nat'l Carriers, Inc. v. Carr, 903 F.2d 1154, 1158-59 (7th Cir. 1990), the court noted that (1) Moffitt had voluntarily made herself unavailable for the trial by checking herself into a drug treatment program; (2) based on Ms. Hutchins' testimony before Magistrate Judge Evans, it appeared that Moffitt had been suffering from drug and/or alcohol addiction for at least several months prior to the trial, and there was no indication that Moffitt was any more sick on the day that she admitted herself for treatment than she had been several weeks earlier, when the court set the trial date; (3) Moffitt had not shown that she was wholly unable to attend the trial; (4) Moffitt's counsel had had ample time to prepare for the trial, and, had she kept herself better informed as to her client's status and medical condition, she could

have notified the court of her client's need for treatment sooner than she did. Id. at 6-7. "Continuing the trial at this late stage would waste many hours and financial resources of the parties, the jurors, and the judiciary," the court concluded. Id. at 7-8.

On the same date that Judge Mills denied Moffitt's second supplemental motion to continue the trial, the Board filed a motion to dismiss the case for want of prosecution pursuant to Rule 41(b). R. 51, 52. Judge Mills denied the motion that same day. See R. 51.

On the following day, January 26, Judge Mills called the case for trial. See R. 64. Moffitt was absent. Moffitt's counsel was present, and she orally asked the court to reconsider its refusal to postpone the trial. She argued that Moffitt's condition constituted a recognized disability for purposes of the Americans with Disabilities Act, 42 U.S.C. sec. 12101, et seq., and the Family and Medical Leave Act, 29 U.S.C. sec. 2601, et seq., and that the court, although obviously not her employer, ought to accommodate her condition by continuing the trial date. R. 64 at 7. Hutchins was also present, and she testified in support of the motion. Hutchins indicated that Moffitt's condition had deteriorated over the previous year to the point where "[h]er ability to take care of herself is completely gone and she cannot take care of her children." Id. at 10. (Hutchins had placed Moffitt's children in day care since August of 1998.) Hutchins confirmed that Moffitt had been gone for two weeks at the beginning of January and that after she returned home, she had helped Moffitt check herself into a drug and alcohol rehabilitation program. Clarifying her previous testimony, Hutchins indicated that Moffitt had never before been hospitalized for drug and alcohol addiction, although she had been hospitalized the previous August for psychiatric observation. According to Hutchins, Moffitt would be in the hospital for three weeks, followed by a period of outpatient treatment. Finally, Hutchins indicated that Moffitt had not been opening, let alone responding to, any of her mail. In further support of the motion to reconsider, Moffitt's counsel presented to the court a second, brief letter from Moffitt's physician, which indicated that Moffitt had been diagnosed as suffering from cocaine dependence, alcohol dependence, and a depressive disorder. R. 54, Ex. 1. "At this time," her physician wrote, "our recommendation is for Ms. Moffitt to continue in treatment to address her disease of addiction." Id.

After considering this evidence, Judge Mills orally denied the motion to reconsider. Among

other things, he noted that neither of the letters from Moffitt's physician disclosed whether Moffitt might be able to leave the treatment program during the day in order to attend the trial. He went on to emphasize that Moffitt's counsel had had more than two years to prepare for the trial and that nearly a week had passed since the jury was selected. The judge therefore ordered Moffitt's counsel to proceed with the trial. R. 64 at 22-25.

At this point, Moffitt's counsel indicated that she was not prepared to go forward. Id. at 25. When asked why she could not proceed with witnesses other than Moffitt herself, her counsel answered, "Because this is an employment discrimination case. My client is the key witness. She's the only one . . . that can testify to matters alleged in the complaint." Id. The court subsequently ascertained that the parties had taken some ten depositions in the case, including the plaintiff's. The court indicated that Moffitt's attorney could have proceeded by calling other witnesses, by introducing the plaintiff's deposition into evidence, and by using the interrogatories and other exhibits that were already present in the case file. Id. at 29. The court therefore granted the Board's orally renewed motion to dismiss the case pursuant to Rule 41. Id. at 30-31.

Several weeks later, the court issued a detailed order amplifying on the grounds for dismissing the case. R. 62. Among other things, Judge Mills emphasized that Moffitt's counsel had not made any effort to proceed with the trial in the plaintiff's absence:

She could have easily called one of her other witnesses and let her client testify at a later date. Moreover, she could have read her client's deposition into the record if necessary. Despite these alternatives, counsel stated that she absolutely could not proceed without her client being present in the courtroom. As a matter of fact, she brought with her no other witnesses, nor exhibits. The record does not reflect that counsel even attempted to subpoena her witnesses. . . .

R. 62 at 12-13 (footnote omitted). Moffitt herself, in the court's view, "[b]y her misfeasance and nonfeasance," had shown no interest in moving forward with the trial. Id. at 13. She had not read the mail from her attorney informing her of the trial date, she had not given timely notice to her attorney or the court of her illness and her desire to seek treatment, and apparently she had "voluntarily made herself unavailable by checking into a drug treatment

program." Id. at 14 (emphasis in original). Moffitt had also failed to submit credible evidence that she was physically unable to attend her trial. Id.; see also id. at 15. Finally, the court noted that once Moffitt's pre-trial motions for a continuance had been denied and the jury was empaneled, Moffitt and her counsel should have expected that the case would be dismissed if they did not proceed with the trial. Id. at 17-18. Under those circumstances, the court concluded, "[n]ot dismissing the suit and granting a continuance of this action would be penalizing the wrong party, mainly, the taxpayers, as well as the Defendant who came ready for trial." Id. at 18.

II.

Moffitt contends on appeal that the district court erred when it refused her request for a continuance and dismissed her case for want of prosecution pursuant to Rule 41(b). This is not a case, Moffitt argues, in which there was a record of delay or contumacious conduct on the part of the plaintiff. Discovery had concluded, all pre-trial matters had been resolved, and the case had been ready for trial for nine months. But when the trial date arrived, she was hospitalized for drug and alcohol rehabilitation. As a result, she could neither be present for the trial nor assist her counsel in the prosecution of her lawsuit. The right thing for the court to have done, in Moffitt's view, was to grant her a short continuance; this would have enabled her to complete her rehabilitation without undue prejudice to the Board. When the court refused that request, Moffitt asserts, the court placed her counsel in the untenable position of putting on a case without an essential witness (Moffitt herself). To then dismiss the case when her counsel announced that she could not proceed in her client's absence was an unreasonably harsh measure that effectively penalized Moffitt for a recognized disability.

Our review of the district court's decision not to grant Moffitt a continuance, and to dismiss the case for want of prosecution is, of course, deferential. Ball v. City of Chicago, 2 F.3d 752, 755 (7th Cir. 1993). We ask not what we ourselves might have done, but whether the district judge abused his discretion in deciding to act as he did. See, e.g., Esposito v. Piatrowski, 223 F.3d 497, 499 (7th Cir. 2000) (Rule 41(b) dismissal); United States v. Cruz-Velasco, 224 F.3d 654, 666-67 (7th Cir. 2000) (denial of continuance). So long as the district judge's analysis was not tainted by a legal error or the failure to consider an essential factor, see Kruger v. Apfel, 214 F.3d 784, 786 (7th Cir. 2000) (per

curiam), we will reverse only if no reasonable person could concur in the district judge's decision or, put another way, only if the decision strikes us as fundamentally wrong, In re Bluestein & Co., 68 F.3d 1022, 1025 (7th Cir. 1995) (per curiam).

Several points deserve making at the outset. First, we agree with Moffitt that there is no real record of delay or contumacious behavior on her part in this case. See, e.g., Kruger, 214 F.3d at 787, quoting Dunphy v. McKee, 134 F.3d 1297, 1299 (7th Cir. 1998). Nor is it a case in which sanctions less severe than dismissal had already proven ineffective as a means of preventing further noncompliance with the court's orders. See, e.g., 3 Penny Theater Corp. v. Plitt Theatres, Inc., 812 F.3d 337, 339 (7th Cir. 1987); but see also Ball, 2 F.3d at 756 ("[t]he judge is not required to impose graduated sanctions . . . before dismissing a case for failure to prosecute"). Nor had the court expressly warned Moffitt that it would dismiss the case for want of prosecution if she was not prepared to go forward on the scheduled trial date. See id. at 755 ("there should be an explicit warning in every case"). On the other hand, what the court confronted in this case was the plaintiff's unwillingness to proceed on the date scheduled for trial, as opposed to the more typical failure to comply with her discovery obligations on time, or to meet some other pre-trial deadline. As Judge Mills recognized, "'it is not unreasonable to treat a failure to attend trial more severely than a failure to comply with discovery orders in a timely fashion.'" R. 62 at 17, quoting Johnson v. Kamminga, 34 F.3d 466, 469 (7th Cir. 1994), cert. denied, 514 U.S. 1023, 115 S. Ct. 1373 (1995); see also Owen v. Wangerin, 985 F.2d 312, 317 (7th Cir. 1993) (cases are typically dismissed for failure to prosecute "when the plaintiff is not ready for trial or fails to appear"); Knoll v. AT&T, 176 F.3d 359, 364-65 (6th Cir. 1999) (collecting cases); 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure sec. 2370, at 367-71 & nn. 33-34 (1995). One naturally expects the plaintiff to be present and ready to put on her case when the day of trial arrives. A litigant's day in court is the culmination of a lawsuit, and trial dates--particularly civil trial dates--are an increasingly precious commodity in our nation's courts. And here, of course, there could be little doubt that the district court was expecting the plaintiff and her counsel to proceed on the scheduled trial date, notwithstanding the plaintiff's personal situation. In the fortnight immediately preceding the trial date, the court had twice issued written orders denying Moffitt's multiple requests for a postponement (R. 45, R. 53), and

a jury had already been empaneled. See Bluestein & Co., 68 F.3d at 1026 (prior warnings not required in extreme cases when counsel should have expected his actions to result in dismissal); Ball, 2 F.3d at 756 ("[r]eversal is not warranted if . . . it is plain that the plaintiff's lawyer knew that he faced dismissal of his case"). Of course, this is not a case in which the plaintiff or her counsel simply failed to show up. Although the record is lacking in some of the details, there is no dispute that Moffitt was in fact hospitalized in a treatment program when the case was called for trial. The specific question we must answer, then, is whether the court was required to delay the trial under these circumstances, or whether it was within the district court's discretion to insist that plaintiff's counsel proceed with the trial even in the plaintiff's absence.

Our opinion in Schneider Nat'l Carriers, Inc. v. Carr, 903 F.2d 1154, on which Judge Mills relied in part (see R. 53), is a useful starting point. Carr, the defendant and counter-plaintiff in that case, had sustained injuries in a highway collision. Approximately five weeks before the scheduled trial date, Carr sought a continuance, stating that he intended to enter a medical treatment program to deal with psychological and behavioral problems stemming from the injuries he had suffered in the collision nearly two years earlier. After the district court refused him a postponement, Carr renewed his request, supporting it the second time around with a copy of his proposed treatment plan and letters from his doctors indicating that he should enter treatment as soon as possible. Again the court denied the motion, and the trial went forward as scheduled. Carr did not appear, and his attorney did not introduce his deposition into evidence. After hearing conflicting testimony about who was responsible for the accident, the jury found against Carr. Carr appealed, arguing that the district court had abused its discretion in refusing to continue the trial date once informed that Carr would be unavailable.

We found no abuse of discretion in the court's decision to proceed in Carr's absence. 903 F.2d at 1158-59. We noted that "Carr was no sicker on the day he finally entered [the treatment program] than he was at the time the trial date was originally set." Id. at 1158. In fact, the record indicated that his physicians had urged Carr to obtain treatment "early on" but that he had refused; and "[t]here was no sudden change of medical circumstances that required him to rush into treatment." Id. Moreover, Carr had presented no evidence that his treatment in fact precluded him from participating in the trial--by attending

court during the day, for example, and returning to the treatment facility in the evening. Id. We also rejected Carr's argument that by conducting the trial without him, the district court had prevented him from giving his own testimony. In pertinent part, we noted that Carr "[did] not explain why his counsel failed to introduce the transcript of his deposition testimony into evidence, or why deposition testimony would not have been adequate . . . ." Id. (We went on to point out that because Carr had no memory of the accident, his testimony would not have affected the outcome of the trial in any event. Id.)

Although Schneider Nat'l Carriers guides our decision today, the circumstances we confront in this case are different in one significant respect deserving of mention. As the district court pointed out, Hutchins' testimony confirms that Moffitt had been suffering from an addiction to drugs and/or alcohol for a good while before she finally checked into a rehabilitation program. R. 53 at 6-7; see R. 64 at 10-13. Even so, we do not think that Moffitt can be faulted for finally seeking treatment on the eve of trial. By her mother's account (which is not disputed), Moffitt had an extremely serious problem: she was "completely out of control" (R. 64 at 10), she had lost the ability to take care of herself or her children (id. at 10-11), and she "[did] not deal with anything" (R. 63 at 18). Although the details of her disappearance in early January remain cloudy, clearly some sort of a crisis had spurred her decision to seek treatment: her whereabouts had been unknown to her mother for two weeks, her mother's car had turned up in the possession of strangers, and Moffitt had eventually returned home in a "very ill" state (R. 63 at 11, 12-13). According to her lawyer, she was not even lucid. R. 63 at 17. Her doctor's second letter confirms that she was suffering from drug and alcohol addition as well as a depressive disorder. R. 54, Ex. 1.

This is a far cry from Schneider, in which the record revealed no immediate need to begin a course of treatment that had already been postponed for some time. Whatever details we lack about Moffitt's condition, she clearly had a serious addiction problem that required treatment. No doubt it would have been more convenient for all concerned had Moffitt embarked on a course of treatment sooner than she did. But, in the absence of any evidence that Moffitt in some way manipulated events in order to put the trial off, we emphatically reject the suggestion that Moffitt "chose" to make herself unavailable for trial by seeking out treatment for her addiction when she did and that, having suffered from addiction for a number of months,

immediate treatment was unnecessary. The notion that Moffitt could or should have continued on a destructive course of drug and alcohol abuse until the trial was over is unseemly. That said, two aspects of our rationale in Schneider are pertinent here.

First, although the record leaves no real doubt that Moffitt's condition required treatment, it leaves unanswered a number of important questions vis e vis Moffitt's ability to testify in support of her own case or to otherwise attend and participate in the trial. Although it seems clear from Hutchins' testimony that the treatment program in which Moffitt had enrolled herself was an in-patient program, we know little more about the nature of the program and its impact upon her ability to participate in the trial. We do not know, for example, whether the program would have permitted Moffitt to absent herself, if only for a few hours, in order to testify in court. We do not know whether it would have been feasible for Moffitt to have submitted to a video-taped, evidentiary deposition at the treatment facility rather than leave the facility to testify. We do not know whether her lawyer would have been permitted to consult with her by telephone or in person. Moffitt was one week into her three-week course of treatment when the trial was scheduled to begin. We do not know what her condition was at that time, and so we do not even know whether she was physically or mentally able to testify or to consult with her lawyer, assuming it was otherwise possible logistically for her to do so.

We appreciate that Moffitt's lawyer was faced with an extraordinarily difficult situation. But we are given no reason to believe that the additional details necessary to assess the extent of Moffitt's unavailability could not have been provided to the court. From the first, it was clear that Judge Mills expected more detail as to the necessity of postponing the trial date, and his expectations were eminently reasonable. By the time the trial was ready to commence, Moffitt had been in treatment for a week. It should have been possible by that time to supply the details that are missing from this record. See United States v. $94,000 in U.S. Currency, 2 F.3d 778, 787-88 (7th Cir. 1993).

Second, no record has been made as to why it was not feasible for Moffitt's attorney to present her case even if Moffitt were unable to testify. The final pretrial order in the case had been on file for nine months. Twice on the day of jury selection, Moffitt indicated that "we were prepared to go to trial in November." R. 63 at 6, 20. We can readily appreciate that the unexpected absence of the plaintiff posed an enormous

challenge to her counsel. But there were more than 80 individuals identified as potential witnesses for Moffitt in the pre-trial order, and some 129 exhibits. The Board had taken Moffitt's deposition, which no doubt would have supplied some, if not all of the information that Moffitt would otherwise have offered in live testimony. The district court was plainly ready to admit that deposition into evidence. R. 64 at 29. No doubt, Moffitt's counsel would have had to scramble to assemble a case that did not depend on her client's live testimony. But there was time, even after Moffitt was admitted to the treatment program--several days, even, after the jury was picked--in which that effort could have been made.

It may well have been true, as Moffitt suggests, that there were points that could only be established through additional testimony from Moffitt herself. There may have been conflicts between Moffitt's account of events and those of other witnesses, which would have required live testimony from all witnesses, including Moffitt, in order to permit the jury to make a credibility assessment. But as Schneider makes clear, we will not simply assume that it was impossible to go forward in the plaintiff's absence. By the time the trial date arrived, the district court had already denied several motions for a continuance, noting in each of its two orders the absence of evidence that Moffitt was truly unavailable. R. 45 at 2; R. 53 at 7. Against that backdrop, the district court was fully within its rights to expect that if indeed Moffitt could not appear and/or assist her counsel in any manner, and if her counsel truly could not proceed without Moffitt, Moffitt's attorney would make a concrete showing that it was not feasible for her to proceed when the case was called for trial. As difficult as the situation was, there was time enough for Moffitt's counsel to demonstrate that Moffitt's presence was needed. But that case was not made.

III.

Confronted with a record that does not adequately establish the plaintiff's unavailability, and that likewise does not document her attorney's inability to proceed without her, we conclude that the district court did not abuse its discretion in dismissing this case for want of prosecution pursuant to Fed. R. Civ. P. 41(b). We appreciate that it would have been quite difficult for the plaintiff and her counsel to proceed given the plaintiff's apparent need to treat her dependence on narcotics and alcohol. However, a court faced with an eleventh-hour request to postpone a trial is entitled to

a more detailed showing than Moffitt and her counsel supplied to the district court in this case.

AFFIRMED

/1 Moffitt separately argues that the district court abused its discretion when it refused to allow her to amend her complaint to add a retaliation claim. In view of our decision to affirm the involuntary dismissal of her lawsuit, we need not reach that question.

/2 Hutchins explained that Moffitt had already sought treatment at two different programs in Springfield in 1998, but without success. Hutchins was also concerned that there were individuals in Springfield who had threatened Moffitt, had held her against her will, and who previously had taken Moffitt's car. For these reasons, apparently, Moffitt and her mother had sought out assistance in Bloomington rather than Springfield. R. 63 at 11-13, 15.