O’SCANNLAIN, Circuit Judge,
concurring in part and dissenting in part
My colleagues would not have dismissed Calloway’s lawsuit had either of them been the judge presiding over it. Nor would I have done so — perhaps. But my colleagues are wrong to vacate the district court’s dismissal order simply because we might have behaved differently. Indeed, this case is about how much discretion our district courts have to manage their dockets and to deal with uncooperative litigants. And those are topics of large importance. Yet my colleagues are unwilling to recognize the generous leeway we have always given district courts to make the difficult decisions that enable the orderly administration of justice. With regret, I cannot join such a disposition.
I
The Supreme Court long ago recognized that district courts have “inherent power” to dismiss a plaintiffs action as a sanction if he fails to prosecute his case, and that such power is one “of ancient origin” that is “necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts.” Link v. Wabash R. Co., 370 U.S. 626, 629-30, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). We review such dismissals “for an abuse of discretion,” McKeever v. Block, 932 F.2d 795, 797 (9th Cir.1991), and we may not overturn one unless “we have a definite and firm conviction that it was clearly outside the acceptable range of sanctions,” Allen v. Bayer Corp. (In re PPA), 460 F.3d 1217, 1226 (9th Cir.2006) (quoting Malone v. U.S. Postal Serv., 833 F.2d 128, 130 (9th Cir. 1987)).
In this case, I agree with the majority that the district court was within its discretion to deny Calloway’s request for a continuance. The question then becomes whether the district court also had discretion to dismiss Calloway’s case in light of his subsequent, repeated declarations that he could not and would not proceed to trial. I believe the district court did have such discretion.
A
To decide whether a district court acted within the bounds of its discretion, courts in our circuit typically apply a five-factor balancing test. We consider: “(1) the public’s interest in expeditious resolution of litigation; (2) the court’s need to manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits.” Pagtalunan v. Galaza, 291 F.3d 639, 642 (9th Cir.2002).[1]
*643 i
The first factor is easily met by the court’s action, as Calloway and the majority both concede.
ii
Likewise for the second factor, as again Calloway and the majority both concede.
iii
The third factor presents a closer call. It asks to what extent the plaintiffs conduct risked prejudicing the other side’s ability to mount a defense.
Fleshing out this factor, we have held that prejudice to the defendants is inextricably bound up with delay caused by the plaintiff. Ash v. Cvetkov, 739 F.2d 493, 496 (9th Cir.1984); Nealey v. Transportacion Maritima Mexicana, S.A., 662 F.2d 1276, 1280 (9th Cir.1980). And, crucially, it is well understood that district courts have discretion to consider the aggregate delay caused by a plaintiff over the course of the entire litigation; the district court need not restrict its analysis to the event immediately preceding the dismissal order. See, e.g., Link, 370 U.S. at 633, 82 S.Ct. 1386 (“[I]t could reasonably be inferred from his absence," as well as from the drawn-out history of the litigation, that petitioner had been deliberately proceeding in dilatory fashion.” (emphasis added)); Franklin v. Murphy, 745 F.2d 1221, 1234 (9th Cir. 1984) (explaining that “[t]he relevant time period in determining failure to prosecute ... is the period of delay caused by the plaintiff’). And “the period of delay” need not be “particularly lengthy” to justify the district court’s exercise of discretion in dismissing for failure to prosecute. Ash, 739 F.2d at 496; see also Moffitt v. Ill. State Bd. of Educ., 236 F.3d 868, 873 (7th Cir.2001) (affirming dismissal despite “agreeing] with [plaintiff] that there is no real record of delay or contumacious behavior on her part in this case”).
In this case, Calloway caused significant delay during the five-plus years between the day he filed his complaint in 2008 and the day the district court dismissed it in 2014. After filing this lawsuit, he waited nearly two and half years before serving the defendants, and in the following years he requested at least eight extensions of time for a variety of reasons, on top of numerous failed attempts to conduct discovery and botched responses to court orders. In light of our precedents, it was not an abuse of discretion for the district court to conclude that Calloway had caused meaningful delay and hence a risk of prejudice to Hayward and Oaks.
iv
The fourth factor instructs the district court to consider the availability of less drastic alternatives. The district court did so, in compliance with our precedents, because the court repeatedly warned Callo-way that he-faced the possibility of dismissal before the court actually ordered it. In re PPA, 460 F.3d at 1229 (stating district court satisfies the fourth factor when it “warn[s] the plaintiff of the possibility of dismissal before actually ordering dismissal”).
v
Finally, the fifth factor — the public policy favoring disposition of suits on their *644 merits — favors Calloway, but I consider its weight to be somewhat diminished given that Calloway’s own deliberate conduct triggered the district court’s decision to dismiss his case.
B
The five traditional factors give the district court’s dismissal order enough support to withstand scrutiny on appeal. And such conclusion is reinforced by the fact that the decision under review is largely consistent with precedent from our own court and elsewhere. As a leading treatise summarizes, there are many cases illustrating that “[a]n action may be dismissed ... if the plaintiff, without offering some explanation that is satisfactory to the court, is not ready to present his or her case at trial or if the plaintiff refuses to proceed at the trial.” 9 Charles Alan Wright et al., Fed. Prac. & Proc. § 2370 (3d ed. 2013). For example, in Kung v. FOM Investment Corp., 563 F.2d 1316, 1318 (9th Cir.1977), we affirmed a dismissal for failure to prosecute where the plaintiff “flagrantly ignored” the district court’s warning “that dismissal would result if [the plaintiff] was not ready for the pretrial conference at the end of the last continuance.” See also Moffitt, 236 F.3d at 873 (affirming dismissal based merely on “the plaintiffs unwillingness to proceed on the date scheduled for trial, as opposed to the more typical failure to comply with her discovery obligations on time, or to meet some other pre-trial deadline”); Owen v. Wangerin, 985 F.2d 312, 317 (7th Cir.1993) (explaining that cases are typically dismissed for failure to prosecute “when the plaintiff is not ready for trial or fails to appear”). Notably, Moffitt was not “a case in which sanctions less severe than dismissal had already proven -ineffective as a means of preventing further noncompliance with the court’s orders,” nor had the court in that case “expressly warned Mof-fitt that it would dismiss the case for want of prosecution if she was not prepared to go forward on the scheduled trial date.” Moffitt, 236 F.3d at 873.
In the present case, the district court made clear to Calloway that it would not grant him any more continuances, and warned him several times that it would dismiss his case if he continued to disavow any intention of proceeding to trial. Yet that is what he did. The district court did not abuse its discretion by following through on its warning. And while it is true that at the end of their colloquy Callo-way tried to backtrack by claiming he did intend to go to trial after all, his overall course of conduct so undermined his credibility that the district court was within its discretion to enter the dismissal order.
II
The majority sees things differently. I respectfully suggest that my colleagues take an unduly cramped view of the district court’s authority to sanction litigants like Calloway, and they arrive at such view only because they have overlooked several of the important lessons our precedents illustrate.
First, the majority insists that Callo-way’s “representations” at the March 21, 2014 hearing “did not cause an unreasonable delay in proceedings.” That may be true, but as explained above, district courts are free to consider the aggregate delay a plaintiff has caused during the entire course of the litigation. My colleagues are wrong to fasten blinders' on the district court; its field of vision need not be restricted to Calloway’s behavior at the hearing that spurred his suit’s dismissal.
My colleagues repeat the same error when they attempt to explain why Callo-way’s conduct posed no risk of prejudice to *645 Hayward and Oaks. Again the majority trains its attention on Calloway’s behavior on the specific date his ease was dismissed, thereby excluding from view the considerable delay Calloway had caused during the nearly six years leading up to the pretrial hearing in March of 2014. As I have explained, such myopia is at odds with our precedents (and with common sense). Likewise, the majority is wrong to pooh-pooh the defendants’ fear of prejudice, which, the majority claims, is “base[d] ... solely on the continuing pendency of the case up to that point in time.” What my colleagues seem to forget is that Callo-way’s dilatory tactics were much of the reason why the case had been pending for so long up to that point.
Finally, my colleagues simply misread the record when they say that the district court never gave Calloway any warning before dismissing his case. To the contrary, several times the district court warned Calloway (over his repeated interruptions) that if he persisted in his unwillingness to proceed to trial, his case would be dismissed. The district court did enough, under our precedents, to demonstrate that it considered alternatives.
Ill
I cannot say with confidence that I would have dismissed Calloway’s suit if I were presiding, nor can I say that the district court abused its discretion in doing so. I regret that my colleagues have given short shrift to the district court’s elemental, and quite essential, power to control its own docket in the face of uncooperative litigants. Such power is.vital to the system’s ability to deliver justice in a timely and careful manner — not only to Calloway, Hayward, and Oaks — but also to all those parties whose disputes were not before the court on the day of Calloway’s pretrial hearing.
I therefore respectfully dissent from the majority’s decision to vacate the district court’s dismissal order.

. Judge N.R. Smith would reverse the district court because it failed to identify the five factors that govern dismissals for failure to prosecute. But we have already held that a district court’s failure to identify such factors is not reversible error. Ash v. Cvetkov, 739 *643 F.2d 493, 496 (9th Cir.1984) (“The district court gave no indication, either orally or in writing, that it considered the essential factors [governing dismissal for failure to prosecute], No findings of fact or conclusions of law were prepared. Such findings, although they would obviously be very helpful on review, are not required. When confronted with this situation we review the record independently in determining whether the district court abused its discretion." (internal citations omitted)).