**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 30, 2018[*]
Decided August 16, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 17-1962

| | |
|---|---|
| RALPH MLASKA, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 15-cv-0918-MJR-SCW |
| | |
| LOUIS SCHICKER, et al., | Michael J. Reagan, |
| *Defendants-Appellees.* | *Chief Judge.* |

**O R D E R**

Ralph Mlaska, formerly a prisoner at Shawnee Correctional Center, suffers from chronic penile and testicular pain. He has filed several actions in state and federal court against prison staff and the prison's contracting healthcare provider, asserting that he received inadequate medical care in violation of his constitutional rights. The case before us—Mlaska's most recent federal suit—was dismissed with prejudice because Mlaska did not comply with court orders and filed "verbose and incoherent pleadings" that

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

impeded the court's ability to address the merits of the case. *See* FED. R. CIV. P. 41(b). Although we disagree with the dismissal of the case as a sanction, we affirm the judgment because Mlaska's claims are barred by the doctrine of res judicata.

Mlaska alleges that his condition is attributable to an unrelated medication that causes painful and prolonged erections as a side effect. While on the medication, he felt fluid draining and began to experience pain in his abdomen and "scrotal areas." The prison scheduled consultations with urologists and arranged for diagnostic testing, but the doctors found no physical abnormalities that would explain Mlaska's symptoms.

Dissatisfied with his care, Mlaska filed a state-court action in January 2015, alleging that prison officials and medical staff were deliberately indifferent to his chronic penile pain, conspired to alter medical records so that he would be denied effective medical treatment, and retaliated against him with improper medical care for filing previous lawsuits. A state judge announced that he intended to dismiss Mlaska's claims with prejudice, and one month later Mlaska brought the same claims in this lawsuit, adding defendant Mary Miller, a healthcare administrator at Danville (Mlaska's former prison).

Anticipating that a final state-court judgment might trigger the doctrine of res judicata and preclude litigation in federal court, the judge twice granted the defendants' motions to stay proceedings to await completion of the state suit. (The stay was briefly lifted in between.) In ruling on the motions, the judge relied on his "inherent" power to stay a case. *See* 28 U.S.C. § 1738; *Texas Independent Producers & Royal Owners Ass'n v. EPA*, 410 F.3d 964, 980 (7th Cir. 2005). Neither the defendants nor the judge mentioned *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976)—the doctrine that permits a federal court to halt proceedings and defer to a parallel state case as a matter of "wise judicial administration." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 497–98 (7th Cir. 2011) (quoting *Colorado River*, 424 U.S. at 818).

During both stays, Mlaska filed several voluminous motions, including requests to begin discovery and "notices" imploring the court to lift the stay and proceed with the case. All of the motions were denied as "moot" in light of the stay.

Mlaska's state case ended with a final judgment in favor of the defendants. Once notified, the district judge ordered Mlaska to inform the court of his intention to appeal the state judgment, and later extended the deadline at Mlaska's request. The purpose of the orders, the judge explained, was to assess whether a final state-court judgment existed to support the defendants' res judicata defense. In the second order, the district judge instructed Mlaska to include in his response only specific information about his state case, including case numbers, deadlines, and his intent to appeal. The judge warned: "[f]urther delays will not be tolerated, and could result in dismissal." Mlaska responded with

another flurry of verbose filings. None contained case numbers, deadlines, or a clear statement of his intent to appeal.

The district judge dismissed the action with prejudice for failure to comply with a court order. *See* FED. R. CIV. P. 41(b). Repeating old patterns, Mlaska filed several post-judgment motions, alleging that delays in the prison's mail system were to blame for his noncompliance because he did not receive the court order until after the deadline had passed. The judge summarily denied these motions.

On appeal Mlaska argues that the district judge abused his discretion when he dismissed the case for failure to follow court orders because it was impossible for him to comply with them. The judge did not test Mlaska's representation that he did not receive the orders requesting information about his state case until after the deadline to respond had passed. Never receiving the orders, for reasons beyond his control, is a compelling reason not to respond. *See Link v. Wabash R. Co.*, 370 U.S. 626, 636 (1962) (citing *Societe Internationale Pour Participations Industrielle et Commercials, S.A. v. Rogers*, 357 U.S. 197, 211 (1958) (remarking that failure to follow court order for circumstances beyond petitioner's control does not warrant dismissal)).

Moreover, Mlaska's next argument, that his motions to recruit counsel should have been granted, weighs against dismissing his case as a sanction because he might have been prejudiced by the lack of counsel. Mlaska first moved for recruitment of counsel when he filed his amended complaint in September 2015. Having received no ruling, he filed a second motion in February 2016, while the defendants' first motion to stay the case was pending. The district judge declared the second motion "moot" yet "still pending," and within days stayed the case. Finally, as part of the judge's final order dismissing the case as a sanction—issued fifteen months after the first motion had been filed— he summarily denied the first motion. That was an abuse of discretion, both because the judge failed to rule on the request, *Childress v. Walker*, 787 F.3d 433, 443 (7th Cir. 2015), and because he did not address the relevant factors under *Pruitt v. Mote*, 503 F.3d 647 (7th Cir. 2007).

Left to wonder if his motion to recruit counsel would be granted, Mlaska struggled to litigate his case properly on his own and caused significant frustration along the way, leading to conflicts that were later used to justify invoking Rule 41(b). Indeed, the district judge acknowledged that Mlaska—who clearly did not understand the concept of a stay—was filing irrelevant motions that were impeding the court's work. But Mlaska's confusion should not be read as a "record of delay or contumacious behavior." *See Moffitt v. Ill. State Bd. of Educ.*, 236 F.3d 868, 873 (7th Cir. 2001). To the contrary, Mlaska's filings, requesting discovery and urging the court to lift the stays, show his eagerness to proceed

with the litigation. Under the circumstances we do not see how the facts of this case justify imposing "the most severe sanction that a court may apply," *see Webber v. Eye Corp.*, 721 F.2d 1067, 1069 (7th Cir. 1983), particularly when no lesser sanction was even attempted. *See Moffitt*, 236 F.3d at 873.

Even though Mlaska's case should not have been dismissed as a sanction, a remand is not called for here because his claims are barred by the doctrine of res judicata. *See Baek v. Clausen*, 886 F.3d 652, 668 (7th Cir. 2018); *see also Kowalski v. Boliker*, 893 F.3d 987, 994 (7th Cir. 2018) (permitting affirmance of dismissal "on any ground supported by the record"). In determining whether prior state-court litigation has preclusive effect in a federal-court action, we look to the state's preclusion doctrine. *See* 28 U.S.C. § 1738; *Adams v. Adams*, 738 F.3d 861, 865 (7th Cir. 2013). Under Illinois law, res judicata requires three elements: "(1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of cause of action; and (3) an identity of parties or their privies." *Village of Bartonville v. Lopez*, 77 N.E.3d 639, 650 (Ill. 2017).

Mlaska ultimately clarified that he withdrew his state-court appeal a few months after the case was dismissed involuntarily; in Illinois, that qualifies as a final judgment on the merits against him. *See DeLuna v. Treister*, 708 N.E.2d 340, 344 (Ill. 1999) (citing ILCS S. Ct. R. 273). Mlaska also relies on identical facts, and some identical claims, in both his cases. *See Lutkauskas v. Ricker*, 28 N.E.3d 727, 739 (Ill. 2015) (finding identify of cause of action for claims involving a single group of operative facts). He even acknowledges in his complaint that his federal and state claims are "similar to and/or related to the same injury" because they all revolve around his medical care at the prison. *See Rein v. David A. Noyes & Co.*, 665 N.E.2d 1199, 1206 (Ill. 1996). And he is right. In his state and federal cases Mlaska sued the defendants for denying him medical treatment in retaliation for his other lawsuits, for engaging in a conspiracy to deny him medical care (including falsifying and destroying his medical records), for being deliberately indifferent to his medical needs, and for implementing a policy that intentionally denies or delays treatment to inmates. Mlaska's other claims in his federal complaint—challenging the "pain scale" policy used to measure an inmate's pain level, questioning the prison medical provider's failure to train employees, and asserting an equal-protection claim (based on a class of inmates who do not receive medical treatment because of "personal bias and reasons such as retaliation")—either restate existing claims or relate to the same facts.

Finally, an identity of parties exists because Mlaska sued the same defendants in both actions. The only new defendant, Mary Miller, is in privity with the original defendants. *See Lutkauskas*, 28 N.E.3d at 739. Privity exists between parties "who adequately represent

the same legal interests." *People ex rel. Burris v. Progressive Land Developers, Inc.*, 602 N.E.2d 820, 826 (Ill. 1992). The claim against Miller originates from allegations in the state complaint that someone from Danville was sending messages to Shawnee staff (whom he names as defendants), calling him a "trouble maker." He later learned that the messages were sent by Miller and added her to the federal-conspiracy claim. Thus, the defendants in state court represented the same legal interests as Miller in the instant action: they were all being sued for the same misconduct under the same legal theory. Indeed, Miller likely would have been included in the state action if Mlaska had discovered her identity sooner. *See Tartt v. Nw. Community Hosp.*, 453 F.3d 817, 823 (7th Cir. 2006) (finding party who could have been joined in former action was in privity with named parties); *Agolf, LLC v. Village of Arlington Heights*, 946 N.E.2d 1123, 1132 (Ill. App. Ct. 2011) (finding privity where interests of parties "are so closely aligned"). Because Mlaska's claims are precluded, his case was appropriately dismissed.

AFFIRMED