Herbert E. **THEILMANN**, Administrator of Herbert K. Theilmann, Appellant,

v.

The **RUTLAND HOSPITAL, INC.**, and Dr. **Donald D. Dingman**, Appellees.

No. 363, Docket 71–1865.

United States Court of Appeals, Second Circuit.

Argued Jan. 3, 1972.

Decided Feb. 2, 1972.

Morton D. Shulman, Averill Park, N. Y., for appellant.

R. Joseph O'Rourke, Ryan, Smith & Carbine, Rutland, Vt., for appellee The Rutland Hospital, Inc.

Peter P. Plante, Black & Plante, White River Junction, Vt. (French & Miller, Rutland, Vt., of counsel), for appellee Dr. Donald D. Dingman.

Before FRIENDLY, Chief Judge, and MOORE and OAKES, Circuit Judges.

PER CURIAM:

Herbert E. Theilmann, Administrator, appeals from an order of May 19, 1971, dismissing his suit with prejudice for failure to prosecute, pursuant to Fed.R. Civ.P. 41(b). We affirm.

The action was initiated in March, 1969, based on alleged medical malpractice said to have occurred to appellant's father in Rutland, Vermont, in April, 1966. Three continuances were granted in 1970 [1] and one was granted on January 11, 1971, the latter upon stipulation of the parties for the purpose of allowing plaintiff to obtain "associate counsel for the reasons that there may be some personal disqualifications" on the part of the plaintiff's attorneys. Additionally, on February 9, 1971, it was ordered that the case be passed, as Gladys Theilmann, widow and chief potential beneficiary of her deceased husband, was hospitalized and unavailable for trial.[2]

Between February and the beginning of April, 1971, plaintiff discussed the handling of the case with Morton Shulman, an attorney practicing in plaintiff's hometown, Averill Park, New York. On April 5, 1971, he authorized the Rut-

land lawyers, Robert and John Bloomer, who had worked on the case, to forward the file to attorney Shulman. On April 15, the Bloomers sent correspondence to Shulman containing the pertinent portions of plaintiff's file, notice that the case was on the calendar for the Montpelier term of the district court, to be called May 4, 1971, and notice of the Bloomers' intention to withdraw from the action, unless Shulman indicated he wanted them to remain as counsel of record. By a letter to the clerk of the court dated April 28, 1971, Shulman requested the clerk to note his appearance in the action; apparently at the request and employment of plaintiff and according to an understanding between himself and the Bloomers, Shulman was to proceed with the litigation under his command, with the Bloomers remaining in merely as counsel of record to comply with the Vermont rule of court. The Bloomers, therefore, did not at that time seek to withdraw from the action.

In his letter to the clerk of the court dated April 28, Shulman indicated that he and a Troy, New York, attorney named Viger would handle the case, and requested informally that the matter be postponed until the middle of June, 1971. Thereupon, without further ado, on or about April 30, 1971, Shulman left the country for a vacation in Spain, not returning until May 11, 1971. Meanwhile, the clerk of the court on May 5 had written to inform him that Judge Leddy had scheduled the case for trial during the week of May 17, 1971.[3]

---

1. On January 9 the case was continued to the next term of the court to allow, *inter alia*, the appointment of Herbert E. Theilmann of Averill Park, New York, administrator cum testamento annexo of the estate of his father, who died in Rutland on December 5, 1969. On May 27 and September 14, the court granted motions for continuance based on the physical incapacity of a third defendant, who was subsequently dropped from the action on November 30, 1970.

2. Gladys Theilmann died February 15, 1971, in Rutland; plaintiff is executor of her estate.

3. Judge Leddy noted for the record on Monday, May 17, that on the previous Tuesday or Wednesday (May 11 or 12) a Vermont attorney otherwise unassociated with the case had conferred with him at the request of Mr. Viger as to the status of the case. Judge Leddy told that attorney that the plaintiff should be prepared to go to trial on Monday, May 17.

Judge Leddy stated for the record on May 18 that he had spoken with Shulman on the preceding day and had told him that the case would go to trial that day (May 17).

The case in fact was called for trial on Monday, May 17. On that day the Bloomers moved to withdraw from the case, on the ground that plaintiff no longer wished them to represent him, but the motion was denied. Viger, the lawyer from Troy, by letter dated May 13 had filed a motion for postponement until September, on the ground that Shulman's vacation had interrupted his attention to the matters of the case and that the complicated nature of the action necessitated further preparation by all parties to insure proper representation of the respective interests involved; on the 17th, Judge Leddy also denied that motion. On the afternoon of the 17th, the jury was impaneled, the court requiring the Bloomers to do the *voir dire* (with plaintiff's consent), and trial was set for the next morning. Although plaintiff's Rutland lawyers, the Bloomers, were present in court on the 17th, Shulman and Viger were not.

Nor did Shulman or Viger appear on Tuesday, May 18, for the opening of the trial. The Bloomers again were present, but plaintiff informed the court that he did not want them to proceed with the case. Judge Leddy, doubtless having in mind that the jury's time could not otherwise be utilized, ruled that the Bloomers should start the case, with Shulman and Viger to take over the next day, May 19.[4]

On the following day Mr. Shulman appeared in court and, arguing that the plaintiff's case was not prepared adequately to proceed to trial, requested a postponement or continuance. Judge Leddy declined to reconsider his May 17th denial of Viger's motion for postponement. After Shulman indicated that he could not proceed further at that time, Judge Leddy entertained and granted defendants' motion to dismiss

the action, with prejudice, pursuant to Fed.R.Civ.P. 41(b).

Dismissal with prejudice is a harsh remedy to be utilized only in extreme situations. Flaksa v. Little River Marine Construction Co., 389 F.2d 885, 888 (5th Cir.), cert. denied, 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968); Syracuse Broadcasting Corp. v. Newhouse, 271 F.2d 910, 914 (2d Cir. 1959). Nevertheless, the authority to invoke it for lack of prosecution, both on defendant's motion and *sua sponte,* is an inherent ". . . control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash Railroad Co., 370 U.S. 626, 630–631, 82 S.Ct. 1386, 1389, 8 L. Ed.2d 734 (1962). Thus the scope of review over an order of dismissal accorded an appellate court is extremely narrow, confined solely to whether the control has been exercised within the permissible range of the trial court's discretion. Peterson v. Term Taxi Inc., 429 F.2d 888, 890 (2d Cir. 1970); Purer & Co. v. Aktiebolaget Addo, 410 F.2d 871, 879 (9th Cir.), cert. denied, 396 U.S. 834, 90 S.Ct. 90, 24 L.Ed.2d 84 (1969); Dyotherm Corp. v. Turbo Machine Co., 392 F.2d 146, 148 (3rd Cir. 1968).

We hold that Judge Leddy's order dismissing plaintiff's suit with prejudice was not an abuse of discretion. The cumulative acts of Shulman resulted in unnecessary delay of the trial. He left the country on vacation after having been informed of the Bloomers' intention to withdraw as primary counsel, after having received the plaintiff's file, and after knowing that the case probably would be reached for trial within 15 or 20 days. The only efforts in preparation for trial apparently made before leaving the country were to enter his ap-

---

4. The trial did not start on the 18th. The Bloomers spoke with Shulman on the telephone during a recess, informing him of Judge Leddy's ruling. Shulman apparently replied that he would not be, and Viger probably would not be, in court the 19th, but that the Bloomers were not to start the evidence in the case, regardless, because of possible prejudice to plaintiff's suit. The court did not require the taking of evidence on the 18th, but threatened to hold Shulman and Viger in contempt if one of them did not show on the 19th.

pearance and to ask for a postponement (both by mail). After returning from vacation, Shulman did not, nor did his assistant, Viger, appear in court on May 17, the opening day of the proceedings, on which the jury was impaneled and argument was to be had on the motion for postponement. Furthermore, neither Shulman nor Viger appeared on May 18, the day set for the beginning of trial. This conduct, especially the failures to appear *after* the jury had been drawn, distinguishes the case from the cases which might otherwise be relied upon by appellants. *Cf.* Peterson v. Term Taxi Inc., *supra* (plaintiff himself temporarily detained by understandable circumstances from appearing at the hour set for trial); Dyotherm Corp. v. Turbo Machine Co., *supra* (counsel's tardiness created a delay otherwise remediable); Council of Federated Organizations v. Mize, 339 F.2d 898 (5th Cir. 1964) (plaintiffs ordered to appear before trial); Meeker v. Rizley, 324 F.2d 269 (10th Cir. 1963) (counsel failed to appear at pretrial hearing).

The combination of Shulman's and Viger's nonappearance on May 17 and 18, *see* Link v. Wabash Railroad Co., *supra*; Viger's motion for postponement sent by mail on the eve of trial and Shulman's oral request for reconsideration of that motion on May 19, *see* Bardin v. Mondon, 298 F.2d 235 (2d Cir. 1961); and Shulman's refusal to proceed with the trial on May 19, *see* Thompson v. Fleming, 402 F.2d 266 (5th Cir. 1968), when it was surely possible for him to do so —for instance, by putting existing medical records in evidence and the plaintiff

on the stand [5]—made it a proper exercise of the court's discretion to dismiss with prejudice. Link v. Wabash Railroad Co., *supra*; Schwarz v. United States, 384 F.2d 833 (2d Cir. 1967); Durham v. Florida East Coast Railway Co., 385 F.2d 366, 368 (5th Cir. 1967).

Finally, it has been suggested that a dismissal with prejudice ought to be invoked only after less drastic alternative remedies have been explored,[6] such as a remand without prejudice on the condition that the party at fault pay certain costs, Bardin v. Mondon, *supra*, or holding any dilatory counselor in contempt, Dyotherm Corp. v. Turbo Machine Co., *supra*, 392 F.2d at 149. Although these and other alternatives to dismissal are proposed to avoid harming plaintiffs with meritorious claims, the law is settled that dismissal with prejudice is not necessarily an unjust penalty on the client. Link v. Wabash Railroad Co., *supra*, 370 U.S. at 633–634, 82 S.Ct. 1386, 8 L.Ed.2d 734. If not a partner in the inexcusable conduct precipitating the dismissal, the client has his remedy. *See* Schwarz v. United States, *supra*, 384 F.2d at 836. Nothing we say here is intended, of course, to indicate that the client himself was not without some responsibilities for the situation that developed. But the right to a jury trial is too precious, Heyman v. Kline, 456 F.2d 123 (2d Cir., 1972), to permit its effectiveness to be destroyed by non-utilization of jurors drawn caused by unnecessary delays in preparation, lack of attention to the case, or undue procrastination by party or counsel or both.

Judgment affirmed.

---

5. Indeed, in these days when adverse parties and hostile witnesses may be called, it is perfectly possible—even if it is not recommended practice—to prove a given malpractice case even in the absence of a physician willing to testify for the plaintiff.

6. See generally Von Poppenheim v. Portland Boxing & Wrestling Comm'n, 442 F. 2d 1047, 1053–1054 (9th Cir.), petition for cert. filed, 40 U.S.L.W. 3239 (U.S. Nov. 2, 1971) (No. 71–612); Richman v. General Motors Corp., 437 F.2d 196, 199 & n. 4 (1st Cir. 1971); Schwarz v. United States, 384 F.2d 833, 836 (2d Cir. 1967).