05-3805-pr
Lewis v. Rawson

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2005

(Reinstated: May 16, 2008                                    Decided: April 28, 2009)

Docket No. 05-3805-pr

TEDDY  LEWIS,

*Plaintiff-Appellant*,

—v.—

BOYCE  RAWSON,  DANIEL  STYCZYNSKI, Corrections Officer, Great Meadow Correctional
Facility,  FRED  YOUNG, Corrections Officer, Great Meadow Correctional Facility, MARK
FREY, Corrections Officer,  JOHN  COSTELLO, Corrections Officer, H.  GRAHAM,
Lieutenant, Great Meadow Correctional Facility, J.  GILLINGHAM, Sergeant, Great
Meadow Correctional Facility, HAROLD  AUSTIN, Sergeant, Great Meadow Correctional
Facility, C. MURRAY, Correction Officer Great Meadow Correctional Facility,

*Defendant-Appellee*s,

LIEUTENANT BENSON,  THOMAS A. COUGHLIN III, Commissioner, N.Y.S. Dept. of
Correctional Services,  BRIAN F. MALONE, Inspector General, N.Y.S. Dept. of
Correctional Services, ARTHUR A. LEONARDO, Warden, Great Meadow Correctional
Facility,  ROBERT  JUCKETT, Deputy Warden of Security, Great Meadow Correctional
Facility, W.  HOFFMAN, Correction Officer Great Meadow Correction Facility,

*Defendants.*

Before:

CABRANES and RAGGI, *Circuit Judges*, and BERMAN, *District Judge*.[*]

_____

Plaintiff, who on the first day of trial refused to testify in support of his § 1983 claims because he was being detained during trial at the same prison facility where his rights had allegedly been violated, appeals the decision of the United States District Court for the Northern District of New York (Lawrence E. Kahn, *Judge*) to dismiss the case with prejudice.

AFFIRMED.

Judge Berman dissents in a separate opinion.

_____

TEDDY LEWIS, *Plaintiff-Appellant*, *pro se*.

VICTOR PALADINO, Assistant Solicitor General (Barbara D. Underwood, Solicitor General; Andrea Oser, Deputy Solicitor General, and Peter H. Shiff, Senior Counsel, *on the brief*), *for* Andrew M. Cuomo, Attorney General of the State of New York, Albany, New York, *for Defendant-Appellee*s.

_____

REENA RAGGI, *Circuit Judge*:

New York State prisoner Teddy Lewis sued the named defendants, officials and employees of the New York State Department of Correctional Services, pursuant to 42

[*] The Honorable Richard M. Berman of the United States District Court for the Southern District of New York, sitting by designation.

U.S.C. § 1983 for alleged violations of his constitutional rights while being held at Great Meadow Correctional Facility ("Great Meadow"). Proceeding pro se, Lewis now appeals from a judgment of the United States District Court for the Northern District of New York (Lawrence E. Kahn, Judge), dismissing his suit with prejudice based on his refusal to testify at trial while incarcerated at Great Meadow. Because we conclude that the district court acted within its discretion in ordering dismissal, we affirm.

## I.    **Background**

### A.    Pre-Trial Proceedings

Teddy Lewis is a New York State inmate incarcerated through at least 2062 – effectively the rest of his life – for multiple murders. In 1991, Lewis initiated this § 1983 action against defendants for alleged racial harassment and physical assaults sustained during his transfer from Attica Correctional Facility to Great Meadow in 1990.[2]

The litigation of Lewis's § 1983 claims was beset by repeated and lengthy pre-trial delays spanning more than a decade. For example, although the case was designated ready for trial on May 17, 1994, the docket reflects no activity until August 5, 1996, when the matter was reassigned to Judge Kahn. Thereafter, despite Lewis's letters to the court

---

[2] Lewis's transfer followed a riot at Attica. See generally Wright v. Coughlin, 132 F.3d 133, 134 (2d Cir. 1998) (describing Attica riot of May 26, 1990). According to motion papers filed in this action, Lewis was disciplined for his involvement in this incident and, as a result, was confined to the Special Housing Unit ("SHU") at Great Meadow for two years. See Memorandum of Law in Support of Defendants' Motion for Partial Summary Judgment at 1, Lewis v. Benson, No. 91 Civ. 621 (Docket No. 149) (N.D.N.Y. Feb. 11, 2003).

objecting to continued delay,[3] no steps were taken to set his case down for trial until December 7, 1998, when the court advised the parties that trial would commence on March 1, 1999. It did not.

Instead, by letter dated January 20, 1999, defense counsel sought leave to file a motion for summary judgment. Leave was granted, and the district court awarded summary judgment to defendants on March 28, 2000. Lewis appealed, and this court vacated the judgment by unpublished summary order dated January 8, 2001, because of the absence of factual findings or legal analysis supporting the award. See Lewis v. Benson, 23 F. App'x 23, 23 (2d Cir. 2001).

Following remand, on February 20, 2003, defendants moved for partial summary judgment on behalf of the supervisory officials not alleged to have been personally involved in the 1990 assault. In a report issued on September 12, 2003, Magistrate Judge Randolph F. Treece recommended that the motion be granted, and, over Lewis's objections, Judge Kahn adopted the recommendation.[4]

---

[3] On August 29, 1996, Lewis wrote to the court objecting to the lengthy delay in his case, requesting that it arrange for a settlement conference with the defendants, and asserting that the delay had prejudiced him "because most, if not all, of my witnesses have been released from prison and I have no way of making contact with them." On April 8, 1998, Lewis – having apparently received no response to his prior letter – wrote a letter to Chief Judge McAvoy of the Northern District of New York requesting that the Chief Judge intercede to arrange either settlement discussions or a trial date.

[4] Lewis appealed from this ruling, and we summarily dismissed for lack of a final judgment. See Lewis v. Benson, No. 03-0302-pr (2d Cir. June 10, 2004). When Lewis again

4

As to plaintiff's claims against the remaining defendants, in March 2005, the district court assigned Jeremy P. Chen as pro bono counsel for Lewis and set the case down for trial on June 21, 2005, at the federal courthouse in Albany.

B.      The Trial and Dismissal of Lewis's Action

Before trial, Lewis was incarcerated at the New York State Correctional Facility in Auburn, New York ("Auburn"), approximately 150 miles from the federal courthouse in Albany.  See generally Boyce Motor Lines v. United States, 342 U.S. 337, 344 (1952) (recognizing court's authority to "take judicial notice of geography").  Lewis asserts that on the morning of June 21, 2005, he was transported from Auburn to Albany and placed in a holding cell at the federal courthouse.  There, at approximately 10:00 a.m., Chen advised Lewis that during the course of the federal trial he would be held at Great Meadow, the facility where the alleged assaults had occurred and where certain of the defendants were still employed.  Great Meadow, located in Comstock, New York, is approximately 70 miles from Albany.

The morning's court proceedings commenced on the record at 10:30 a.m. in Judge

challenged this ruling after the final order of dismissal, we summarily affirmed the award of summary judgment as to the supervisory defendants. See Lewis v. Rawson, 180 F. App'x 239, 240-41 (2d Cir. 2006).  However, because the record on appeal did not include the transcript of the trial proceedings, we dismissed Lewis's challenge to the dismissal of his remaining claims without prejudice to reinstatement if, within 30 days, Lewis secured or demonstrated reasonable efforts to secure the trial transcript. Id. at 241.  After Lewis filed a copy of the transcript with this court, we reinstated his appeal, which we now address.

Kahn's chambers.[5]  The trial transcript reveals that Judge Kahn, plaintiff's counsel Chen, and defense counsel – Stephen Schwartz of the New York Attorney General's Office – there discussed the fact that Lewis would be shackled during trial, an action apparently deemed necessary in light of the violent nature of both Lewis's crimes of conviction and his disciplinary record in prison.  Indeed, it was Lewis's own counsel who proposed that his client's feet and non-dominant hand be shackled during trial, leaving his dominant hand free for taking and passing notes.

With this resolved, Judge Kahn inquired of counsel: "Is there anything else before we bring up the jury and the [plaintiff]?" Trial Tr. at 4.  The attorneys proceeded to discuss various factual stipulations and the number of witnesses they would call, with Chen indicating that Lewis would be the only witness in support of the plaintiff's case.  Chen requested – and the court agreed – that Lewis would sit in on jury selection.  At no time, however, did Chen raise the issue of Lewis's incarceration during trial at Great Meadow, nor was the subject broached by defense counsel or Judge Khan.  Indeed, neither the trial transcript nor the clerk's detailed notes indicate that a discussion of this subject took place prior to jury selection.

Jury selection commenced at 10:45 a.m. and concluded at 11:37 a.m., whereupon the

---

[5] The location of these initial proceedings is indicated in notes compiled by the court's clerk.  See Trial Notes of Scott A. Snyder, Lewis v. Benson, No. 99 Civ. 612 (N.D.N.Y. June 21, 2005) (Docket No. 176) ("Clerk's Trial Notes") ("10:30 A.M. Court meets minus the jury in chambers.").

6

jury was sworn and given preliminary instructions by Judge Khan. The court then declared

a "five-minute break" before opening statements. Id. at 12. The transcript of the colloquy

that ensued when the break concluded at 11:48 a.m. suggests that it was during that interval

that the issue of plaintiff's incarceration during trial at Great Meadow first arose:[6]

>   THE COURT: Correct me if I'm wrong, Mr. Chen, but Mr. Lewis is concerned about testifying particularly against the defendants who are now assigned to the Great Meadow Correctional Facility?
>
>   MR. CHEN: That's correct, your Honor.
>
>   THE COURT: And as I understand it, he states that he won't so testify unless he's transferred to another facility. I told him that I personally have no power over transferring. As I understand it, I don't think that's within my power to do that. And what's your position on that Mr. Schwartz?
>
>   MR. SCHWARTZ: I don't understand, Judge, because, yes, Mr. Lewis is currently housed at Auburn Correctional Facility. Correct?
>
>   MR. CHEN: That is correct.

---

[6] Following the reinstatement of this appeal, we ordered the parties to provide supplemental briefs addressing "(1) at what point Lewis learned that he would be housed at [Great] Meadow[]; and (2) how quickly he brought his safety concerns to the District Court's attention." In his supplemental submission to this court, Lewis asserts that Chen informed the district court "before jury selection that the plaintiff was in fear of his life from the defendants . . . and would not allow himself to be transferred back to Great Meadow without a court order of protection." Appellant's Supp. Br. at 1 (emphasis added). Even if true, this would indicate only that the district court was made aware that Lewis had concerns about being housed at Great Meadow, but not that he was refusing to testify without an adjournment or transfer, a distinction with a significant difference. In fact, the record does not support Lewis's assertion as to the time of disclosure. The colloquy reproduced in the text indicates that it was during the brief recess between the jury being sworn and the scheduled start of openings that counsel first alerted the district court to Lewis's concern about being confined at Great Meadow during trial.

7

MR. SCHWARTZ: That's another facility.  So he's concerned about –

MR. CHEN: He will be housed at Great Meadow temporarily.

THE COURT: During this trial.

MR. CHEN: During the course of this trial.  And since this is where the incident took place, and he's also concerned about the fact that other defendants are currently employed there, that that concerns him.

MR. SCHWARTZ: This is the first I heard of the fact that he was going to be housed there.  I don't know that I have any authority – I know I don't have any authority to determine where an inmate is being housed during the course of the trial.  I can discuss the matter with the officers and –

THE COURT: Do you want to do that over the next few minutes?

MR. SCHWARTZ: Yes, Judge.

THE COURT: And then let me know your position.  And then we'll act accordingly.

MR. SCHWARTZ: Yes, Judge.

THE COURT: Okay.  Go ahead.

Id. at 13-14.

Following this break, Judge Khan noted on the record what counsel had reported to the court.

THE COURT: On the record.  As I understand it, and correct me if I'm wrong, the Attorney General, Mr. Schwartz, is not opposed to trying to arrange a new facility, but he can't do that at the moment, he would have to look into this.  And as he stated, the plaintiff has no right to select the facility he's going to stay at during the two or three-day trial.

Mr. Lewis, and correct me again, if I'm wrong, has stated that he just won't testify because of this situation – but he doesn't want to dismiss the case

8

himself; he's not consenting to dropping the case.

If there's no other solution, I would dismiss the case and certainly preserve his right to appeal. There's a presumption that any facility he's staying at, he's going to be treated properly and lawfully.

Id. at 14-15.

The court then inquired as to whether any defendants were still assigned to Great Meadow and, upon learning that they were, noted that another option available to it was "just to adjourn this trial for about a few weeks or a month," return Lewis to Auburn, and try the case at the federal courthouse in Syracuse. Id. at 15. After consulting with Lewis, Chen reported to the court that because his client "fears for his life" at Great Meadow, Lewis's preferred choice would be to have the trial adjourned until it could be conducted in Syracuse. Id. at 16.

Defense counsel objected, reiterating that inmates have no right to determine where they are housed and noting that adjournment would inconvenience his clients. He offered yet another option: during trial, Lewis could be placed in the SHU at Great Meadow where surveillance cameras operated around the clock. If this accommodation was insufficient to persuade Lewis to proceed with trial, defense counsel urged dismissal.

Judge Kahn allowed Chen to confer with Lewis to discuss this option, but Lewis did not consent to SHU placement, noting that some of the alleged abuse occurred at that site. Chen again urged adjournment and transfer of the trial to Syracuse.

Having heard from the parties, the district court dismissed the case with prejudice.

9

This appeal followed.

## II.  Discussion

### A.  Standard of Review and Applicability of the *Drake* Factors

Because Lewis's testimony was to be the only direct evidence introduced in support of his allegation that defendants assaulted him during his transfer to Great Meadow, the district court viewed his refusal to testify as a failure to prosecute.[7] Rule 41(b) of the Federal Rules of Civil Procedure states that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."

We review a dismissal for failure to prosecute for abuse of discretion. See, e.g., Ruzsa v. Rubenstein & Sendy Attys at Law, 520 F.3d 176, 177 (2d Cir. 2008). This is because the power of a district court to take such action – while explicitly sanctioned by Rule 41(b) – "has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the

---

[7] According to the exhibit list submitted by Lewis before trial, the only other pieces of evidence Lewis planned to introduce were (1) copies of his medical records from 1987 to 1993, (2) a "Department of Corrections Staff Planning Grid," and (3) "Department of Corrections directives regarding inmate transfers and intake." Plaintiff's Exhibit List, Lewis v. Benson, No. 99 Civ. 612 (N.D.N.Y. June 10, 2005) (Docket No. 174). Assuming that such evidence would have supported Lewis's claims, it could have, at most, provided the basis for a conclusion that Lewis sustained some kind of injury while being transferred to Great Meadow at a time when the defendants were on duty. Without Lewis's testimony, however, this evidence could not have supported a jury finding that defendants assaulted Lewis in violation of his constitutional rights.

orderly and expeditious disposition of cases." Link v. Wabash R.R. Co., 370 U.S. 626, 630-31 (1962); see also Theilmann v. Rutland Hosp., Inc., 455 F.2d 853, 855 (2d Cir. 1972) (noting that, because authority to dismiss for lack of prosecution is "inherent" power of district courts, "the scope of review over an order of dismissal accorded an appellate court is extremely narrow"). We identify abuse of discretion when a district court's challenged decision rests "on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding," or when its ruling "cannot be located within the range of permissible decisions." Wynder v. McMahon, 360 F.3d 73, 76 (2d Cir. 2004) (internal quotation marks omitted). In this case, Lewis does not charge the district court with errors of law or fact. Rather, he asserts that the dismissal falls outside the range of permissible decisions.[8]

In reviewing this argument, we are mindful that dismissal for lack of prosecution is a "harsh remedy" that should "be utilized only in extreme situations." Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir. 1993) (internal quotation marks omitted); cf. Gill v.

---

[8] In his pro se submissions, Lewis asserts that the district court's dismissal violated his Seventh Amendment right to a jury trial. The proper dismissal of an action pursuant to Rule 41(b) does not violate the Seventh Amendment. See generally Fed. R. Civ. P. 41, 1963 Advisory Comm. Note ("The first sentence of Rule 41(b), providing for dismissal for failure to prosecute or to comply with the Rules or any order of court, and the general provisions of the last sentence remain applicable in jury as well as nonjury cases."). However, in light of our duty to read pro se submissions "to raise the strongest arguments they suggest," Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks omitted), and noting that Lewis also contends that the district court failed to consider alternatives to dismissal or to discuss Lewis's options directly with him, we construe his argument as a challenge to the district court's exercise of discretion under Rule 41(b).

11

Stolow, 240 F.2d 669, 670 (2d Cir. 1957) ("In final analysis, a court has the responsibility to do justice between man and man; and general principles cannot justify denial of a party's fair day in court except upon a serious showing of willful default."). In recognition of this principle, "[w]e have in fact fashioned guiding rules that limit a trial court's discretion" when determining whether dismissal for failure to prosecute is appropriate in a particular case. United States ex rel. Drake v. Norden Sys., Inc., 375 F.3d 248, 254 (2d Cir. 2004). We review the trial court's decision by examining five factors, namely, whether

> (1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions.

Id.; see also Harding v. Fed. Reserve Bank of N.Y., 707 F.2d 46, 50 (2d Cir. 1983) (listing factors). In making use of this test, "[n]o one factor is dispositive, and ultimately we must review the dismissal in light of the record as a whole." United States ex rel. Drake v. Norden Sys., Inc., 375 F.3d at 254; see also Palmieri v. Defaria, 88 F.3d 136, 140 (2d Cir. 1996) (holding that proper review of dismissal for failure to prosecute requires careful examination of "each case in its own factual circumstances" (internal quotation marks omitted)).

Significantly, however, the cases in which we have announced and applied the Drake factors have almost exclusively concerned instances of litigation misconduct such as the failure to comply with a scheduling order or timely to respond to pending motions. See, e.g.,

12

Ruzsa v. Rubenstein & Sendy Attys at Law, 520 F.3d at 177 (missing deadline for filing amended complaint); United States ex rel. Drake v. Norden Sys., Inc., 375 F.3d at 250 (same); LeSane v. Hall's Sec. Analyst, Inc., 239 F.3d 206, 209 (2d Cir. 2001) (failing to respond to motion for summary judgment); Lucas v. Miles, 84 F.3d 532, 534-35 (2d Cir. 1996) (failure timely to file amended complaint); Nita v. Conn. Dep't of Envtl. Prot., 16 F.3d 482, 485 (2d Cir. 1994) (failing to respond to pending motions); Minnette v. Time Warner, 997 F.2d at 1025, 1027 (failing to respond to defendant's motion for dismissal); Peart v. City of New York, 992 F.2d 458, 461 (2d Cir 1993) (failing "to comply with two court orders and otherwise demonstra[ting] a lack of respect for the court," culminating in failure to appear at start of trial); Romandette v. Weetabix Co., 807 F.2d 309, 311-12 (2d Cir. 1986) (failing to effect timely service); Harding v. Fed. Reserve Bank of N.Y., 707 F.2d at 48-51 (failing timely to file amended complaint and other litigation delays). In such contexts, where dismissal operates as a sanction for dilatory tactics during the course of litigation or for failure to follow a court order, the straightforward application of the factors identified above provides a reasonable means for evaluating the district court's exercise of its discretion under Rule 41(b).

This case, however, presents a quite different scenario. Lewis did not miss a filing deadline, fail to comply with a discovery order, overlook a scheduled court date, indulge in dilatory litigation tactics, or engage in any other misconduct. Thus, the factors discussed in Drake for identifying abuse of discretion in a district court's decision to impose the

13

"sanction" of dismissal in response to a plaintiff's dilatory, contumacious, or forgetful behavior are not particularly helpful to our analysis. Rather, Lewis's refusal to testify while housed at Great Meadow is better viewed as presenting the district court with two questions: (1) whether to grant Lewis the adjournment he requested, and (2) upon denial of that request, whether to dismiss Lewis's case due to his refusal to offer the only direct evidence that could support his claims. We consider each of these issues in turn.

B. The District Court Acted Within Its Discretion in Granting Dismissal

1. Denial of Adjournment

Accommodating Lewis's concerns, first raised after the jury was sworn, would have required that the "trial [be] adjourned and then rescheduled to be tried out in Syracuse." Trial Tr. at 16. Such an adjournment would have delayed proceedings "a few weeks or a month." Id. at 15. It would, moreover, have required the declaration of a mistrial and the dismissal of the sworn jury. Under these circumstances, the first relevant inquiry is not, as in Drake, whether the delay would have been temporally "significant," 375 F.3d at 254, but rather whether the district court's decision to deny the requested adjournment was itself an abuse of discretion.

This court's precedent instructs us to be "particularly solicitous of a district court's ruling on a motion to adjourn the scheduled start of a trial proceeding." Sequa Corp. v. GBJ Corp., 156 F.3d 136, 147-48 (2d Cir. 1998). We will not disturb such a ruling absent a

14

showing of "clear abuse." Id. "[T]o make that showing, the complaining party must establish both that the denial of the adjournment was arbitrary, and that it substantially impaired the presentation of his case." Id.; accord Farias v. Instructional Sys., Inc., 259 F.3d 91, 99-100 (2d Cir. 2001) (identifying no abuse where, on first day of trial, court denied continuance to obtain absent witness and noting that decisions regarding trial adjournments "rest within the sound discretion of the trial court and will be overturned only" where "there is showing both of arbitrariness and of prejudice to the defendant"); cf. Ungar v. Sarafite, 376 U.S. 575, 589 (1964) ("The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel.").

Applying these principles to this case, we conclude that when a party requests a trial adjournment of several weeks after a jury has been sworn, under circumstances that will require that jury to be dismissed and a new one empaneled, a district court acts well within its discretion in requiring strong justification for the adjournment. See United States v. Cusack, 229 F.3d 344, 349 (2d Cir. 2000) (identifying no abuse where district court denied "two to three week[]" continuance requested "[i]n the middle of trial" to obtain expert witness); cf. Moffitt v. Ill. State Bd. of Educ., 236 F.3d 868, 872, 876 (7th Cir. 2001) (affirming Rule 41(b) dismissal after jury was sworn where plaintiff, "'the only one . . . that [could] testify to matters alleged in the complaint,'" was not available to testify and noting

15

that "a court faced with an eleventh-hour request to postpone a trial is entitled to a more detailed showing than [plaintiff] and her counsel supplied to the district court in this case"). The only such justification suggested by the record is Lewis's fear that he would be abused if housed during trial at Great Meadow, the site of the alleged assault by the defendants, some of whom were still employed at the facility at the time of trial.

On the record presented here, this justification was not sufficiently strong to remove denial of the requested continuance from the range of permissible decisions. The district court observed that it could "understand [Lewis's] discomfort." Trial Tr. at 15. We construe this statement to reflect the court's recognition of the subjective genuineness of Lewis's professed fear. The court did not find, nor was it asked to find, that Lewis's fears were objectively reasonable. Rather, the court referenced a "presumption" that Lewis would "be treated properly and lawfully" at any state correctional facility in which he was housed during trial, including Great Meadow. Id.[9] We identify no error in the district court's reliance on such a presumption in the absence of objective evidence to the contrary. To hold otherwise would place an enormous burden on district courts hearing prisoners' complaints, because

_____

[9] Such a presumption can be derived, in part, from Supreme Court precedent holding that prisoners cannot dictate the particular institution within a penal system to which they are confined. In Olim v. Wakinekona, 461 U.S. 238 (1983), the Court ruled that "an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State." Id. at 245. Rather, "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose." Meachum v. Fano, 427 U.S. 215, 225 (1976) (emphasis added); accord McKune v. Lile, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."). Defendants relied on this line of cases in opposing Lewis's request for an adjournment and transfer of the trial. See Trial Tr. at 14-17.

16

if an incarcerated plaintiff's subjective fear of abuse in a particular penal facility were enough to mandate a transfer out of that facility during trial, then why not also during depositions, during all phases of discovery, or, indeed, as soon as the complaint is filed?

This is not to suggest that district courts should afford anything but careful review to incarcerated litigants' claims that fears of retaliation hamper their presentation of evidence in cases against prison officials. Depending on the circumstances, we expect that any number of steps might be taken to mitigate such fears, including the accommodation suggested by the defendants here, namely, placement in a special-housing unit during the course of trial. See N.Y. Comp. Codes R. & Regs. tit. 7, §§ 301.5, 330.1 (2009) (providing for inmates in protective custody to be housed in SHU to "maximize the safety and security of both the inmates and the facility").[10] Indeed, had the district court decided that in this case it was, in fact, appropriate to grant an adjournment and transfer the trial, we would view such a ruling as also falling within the court's broad discretion. Nevertheless, mindful of the ease with which § 1983 claimants may assert subjective fears of abuse, as well as the considerable challenges that confront penal authorities in ensuring the lawful confinement, transportation, and transfer of thousands of inmates, some of whom, like Lewis, have demonstrated records for violence (even in custody) that demand maximum-security placement, we decline to hold that the district court was required to grant such an adjournment.

_____

[10] To the extent Lewis expressed concern that some defendants were still employed at Great Meadow, the record does not indicate whether any consideration was given to the possibility of not having these defendants assigned to duty – or at least not having them assigned to duty involving inmate contact – during the brief two- to three-day period Lewis would have been held at Great Meadow while his case was on trial.

17

Finally, in upholding the district court's denial of the continuance requested here, we note that Lewis has not demonstrated good cause for failing to alert the district court to his concerns about Great Meadow in a timely fashion. Lewis's assertion that he did not know that he would be housed at Great Meadow until 10:00 a.m. on the morning of trial is hardly convincing. Lewis may not have known for a fact that he would be so housed, but neither he nor his counsel can claim surprise in light of the totality of the circumstances. Lewis was a violent criminal serving, in effect, a life sentence for multiple murders. He also had a record for violence in prison.[11] Lewis could hardly have expected to be confined during the pendency of his civil trial in anything but a maximum-security facility.[12] Moreover, neither he nor his counsel could reasonably have thought that Lewis would continue to be housed at Auburn during trial and transported daily to the federal courthouse in Albany, a driving distance of more than 150 miles each way. Thus, the very real probability that Lewis would be detained during trial at Great Meadow should have been apparent to him and his lawyer well before jury selection. If Lewis feared detention in that facility and wished to ensure his confinement elsewhere, he or his counsel should have made a motion before the day of trial.

---

[11] The recognized degree of danger posed by Lewis is best evidenced by his own counsel's proposal that Lewis be shackled at the feet and one hand during the trial of his § 1983 action. See supra at [6].

[12] The dissent suggests that Lewis's past violent behavior is "largely irrelevant" to the analysis here. Post at [28] n.1. We discuss this behavior simply to explain why (1) the number of state facilities in which Lewis could be housed during trial was limited, (2) Lewis and his counsel could be expected to understand those limitations, and (3) Lewis's eleventh-hour request for an adjournment and transfer of the trial presented the federal court and the state penal authorities with particular challenges.

Even if Lewis could not have anticipated his transfer to Great Meadow before the morning of trial, the transcript indicates that Lewis was in contact with his attorney both before and during jury selection and, according to Lewis, both were aware of Lewis's impending transfer before the morning's proceedings began. However, rather than bring these concerns to the district court's attention promptly, Lewis and his counsel waited until moments before opening statements were to be made. Although the delay was short – just over an hour – in that brief time, a pretrial conference was held, during which the parties were specifically asked to raise any issues requiring resolution before the trial began. More important, a jury was selected and sworn. In denying the requested continuance, the district court could have properly considered plaintiff's failure to raise his concerns about Great Meadow housing or to seek an adjournment during this critical time.

In sum, because Lewis (1) failed to demonstrate that his fear of confinement at Great Meadow during trial was objectively reasonable so as to warrant his refusal to testify at trial, and (2) unreasonably delayed in moving to avoid trial confinement at Great Meadow, we conclude that the district court acted within its discretion in refusing to grant an adjournment and to transfer the trial to another courthouse within the Northern District.

2.    Dismissal for Refusal to Testify

We proceed to consider the district court's related, yet analytically distinct decision to dismiss Lewis's case with prejudice in light of his refusal to testify in the absence of an adjournment and transfer.

"It is beyond dispute" under our precedent "that a district court may dismiss a case

19

under Rule 41(b) when the plaintiff refuses to go forward with a properly scheduled trial." Zagano v. Fordham Univ., 900 F.2d 12, 14 (2d Cir. 1990); see generally 9 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2370, at 389-95 & nn.35-36 (3d ed. 2008) ("An action may be dismissed under Federal Rule 41(b) if the plaintiff, without offering some explanation that is satisfactory to the court, is not ready to present his or her case at trial or if the plaintiff refuses to proceed at the trial.").

Our sister circuits agree. "One naturally expects the plaintiff to be present and ready to put on her case when the day of trial arrives. A litigant's day in court is the culmination of a lawsuit, and trial dates – particularly civil trial dates – are an increasingly precious commodity in our nation's courts." Moffitt v. Ill. State Bd. of Educ., 236 F.3d at 873. Thus, where a district court is confronted with a "plaintiff's unwillingness to proceed on the date scheduled for trial, as opposed to the more typical failure to comply with her discovery obligations on time, or to meet some other pre-trial deadline," it is "not unreasonable" to consider treating such unwillingness "more severely." Id. (internal quotation marks omitted); see Knoll v. AT&T Co., 176 F.3d 359, 365 (6th Cir. 1999) ("Where a plaintiff does not appear at the trial date or, as in this case, is inexcusably unprepared to prosecute the case, Rule 41(b) dismissal is particularly appropriate. Indeed, such behavior constitutes the epitome of a 'failure to prosecute.'"); Owen v. Wangerin, 985 F.2d 312, 317 (7th Cir. 1993) ("The remedy [of dismissal for failure to prosecute] is usually applied when the plaintiff is not ready for trial or fails to appear."); cf. Brock v. Unique Racquetball & Health Clubs, Inc., 786 F.2d 61, 64 (2d Cir. 1986) (recognizing in context of Rule 55 that trial judge "must have

20

broad latitude to impose the sanction of default for non-attendance occurring after a trial has begun." (citations omitted)).[13]

This reasoning applies with no less force where, as here, a party's expressed unwillingness to proceed to trial follows the denial of a request for a continuance. See, e.g., Knoll v. AT&T Co., 176 F.3d at 365 (affirming Rule 41(b) dismissal where attorney, inter alia, "attempted to force the court to grant a continuance by refusing to proceed on the day of trial"); Lopez v. Aransas County Indep. Sch. Dist., 570 F.2d 541, 544 (5th Cir. 1978) (holding that "trial court's denial of plaintiff[s'] eleventh-hour oral motion for a continuance was well within its discretion" and that, "faced with . . . plaintiffs' refusal to proceed, [district court] did not abuse its discretion in dismissing the cause with prejudice for want of prosecution"); Ali v. A & G Co., 542 F.2d 595, 596-97 (2d Cir. 1976) (holding that Rule 41(b) dismissal was not abuse of discretion where court previously denied plaintiffs' request to delay trial due to incomplete discovery and plaintiffs and their attorney were not ready to proceed on day of trial); Hooper v. Chrysler Motors Corp., 325 F.2d 321, 322 (5th Cir. 1963) (holding that district court did not abuse its discretion where "case was dismissed with prejudice by the District Court when [plaintiff] declined to go to trial after denial of his motion for continuance"). To the contrary, where a plaintiff refuses to proceed with trial

___

[13] See generally 9 Wright & Miller, Federal Practice & Procedure § 2369 ("Some courts have held that it is reasonable to treat serious failures to prosecute the litigation more harshly under Rule 41(b) than failures to comply with discovery orders in a timely fashion. As a rather dramatic example of such a serious failure, courts have pointed to the failure to attend trial. A dismissal based on what is deemed a serious failure to prosecute by the court has been found appropriate, even when there is no other record, let alone a pattern, of delay and contumacious conduct by the plaintiff.").

21

following a district court's unfavorable ruling on a request for continuance or in limine motion, we have noted that a district court "ha[s] no real choice but to dismiss the case." Palmieri v. Defaria, 88 F.3d at 140; see also Zagano v. Fordham Univ., 900 F.2d at 15 (observing that, upon denial of plaintiff's motion to dismiss action without prejudice, plaintiff "was obliged to go to trial, failing which involuntary dismissal for failure to prosecute [was] appropriate" (internal quotation marks omitted; alteration in original)).[14] But see Merker v. Rice, 649 F.2d 171, 174-75 (2d Cir. 1981) (holding that district court abused its discretion in dismissing action following plaintiff's refusal to proceed without expert witness where such refusal was not "arbitrary or unreasonable").

The concerns underlying these decisions are only heightened once a civil jury has been selected and sworn. "[T]he right to a jury trial is too precious to permit its effectiveness to be destroyed by non-utilization of jurors drawn caused by unnecessary delays in preparation, lack of attention to the case, or undue procrastination by party or counsel or both." Theilmann v. Rutland Hosp., Inc., 455 F.2d at 856 (internal citation omitted). Therefore, where a party fails to appear or refuses to proceed with trial "after the jury ha[s] been drawn," dismissal with prejudice may be particularly appropriate. Id. (emphasis in original); see also Michelsen v. Moore-McCormack Lines, Inc., 429 F.2d 394, 395-97 (2d Cir. 1970) (holding that district court did not abuse its discretion where, after jury was selected, court

_____

[14] Indeed, to prevent parties from subverting the finality requirement of 28 U.S.C. § 1291 by refusing to proceed under these circumstances, we have held that, as a "general rule . . . interlocutory orders do not properly merge with a final judgment dismissing an action for failure to prosecute." Shannon v. Gen. Elec. Co., 186 F.3d 186, 192 (2d Cir. 1999).

denied renewed motion for continuance to obtain presence of plaintiff and expert, and dismissed case for failure to prosecute). See generally Judith S. Kaye, "Jury Reform: A Work in Progress," 86 Judicature 147, 147 (2002) ("[W]e must be concerned with the quality of the jury experience for each person summoned to serve. We want jurors to experience a court system that works well, respects their time and their lives, and values their performance of this most vital civic duty.").

Again, we recognize that Lewis's refusal to testify without an adjournment and transfer was grounded in a professed concern for his personal safety if housed during trial at Great Meadow. We reiterate that such concerns warrant careful district court consideration. In this case, despite the fact that Lewis waited until a jury was empaneled before raising his detention concerns, the district court explored various options with the detaining officials and the parties, the most promising of which was Lewis's detention in the video-monitored Great Meadow SHU for the brief trial. The court took a number of recesses, the last of which afforded Lewis and his attorney an opportunity to consider the SHU option. While our review task would be easier if, upon receiving Lewis's refusal to accept the SHU option, the district court had provided a fuller explanation for its decision not to adjourn and transfer the case – an option first identified by the court itself – and to order dismissal with prejudice, we nevertheless conclude that the decision manifests no abuse of discretion.

3.      The *Drake* Factors Do Not Dictate a Contrary Result

Even if we were to review the challenged dismissal by reference to the five factors

23

identified in <u>Drake</u>, we would reach no different conclusion.

While a delay of several weeks in prosecuting a case is not always significant, <u>see, e.g.</u>, <u>Shannon v. Gen. Elec. Co.</u>, 186 F.3d 186, 194 (2d Cir. 1999), it is more likely to be so when it occurs after a jury has been sworn because of the risk of a mistrial. <u>Cf.</u> <u>Peart v. City of New York</u>, 992 F.2d at 461-62 (holding that, while delay caused by plaintiff's counsel's failure to appear at trial "might be said to be minimal in view of her offer to begin trying the case ten days later . . . , we have upheld a dismissal for failure to prosecute where a plaintiff's refusal to proceed to trial was of much shorter duration"). In this case, Lewis's refusal to testify unless his case was adjourned and transferred not only risked a mistrial, it demanded it. Under these circumstances, the first <u>Drake</u> factor supports the district court's decision to dismiss.

The second factor yields the same conclusion because the record demonstrates that Lewis and his counsel were given both clear notice that Lewis's continued refusal to testify could result in dismissal and multiple opportunities to confer to determine whether to change course to avoid that result. <u>See</u> <u>United States ex rel. Drake v. Norden Sys., Inc.</u>, 375 F.3d at 254; <u>cf.</u> <u>LeSane v. Hall's Sec. Analyst, Inc.</u>, 239 F.3d at 210 (holding that "brief and technical" warning of dismissal to <u>pro se</u> plaintiff was insufficient).

While a delay of several weeks would not have prejudiced defendants in challenging the merits of Lewis's claim, it would have prejudiced the entity bearing their costs, the State of New York, insofar as it had expended resources to arrange for the presence of the eight defendants, an additional witness, and Lewis himself in Albany on the day of trial. While

the need to duplicate these expenses might not, by itself, warrant dismissal, the factor lends some support to the district court's decision. Cf. Al-Torki v. Kaempen, 78 F.3d 1381, 1385 (9th Cir. 1996) ("Failure to appear for trial, without excuse, prejudices an adversary and interferes with the court's docket about as much as any procedural default can. The other side is likely to have spent thousands of dollars getting its lawyers ready to try the case and arranging for witnesses and exhibits to be available. If the trial does not proceed, the money and effort will have been wasted. The judge is likely to have gone to considerable trouble to clear out time from criminal cases, motion hearings, work in chambers, and other matters, for the civil trial. In many cases . . . jurors and witnesses will have been put to great inconvenience."); Johnson v. Kamminga, 34 F.3d 466, 469 (7th Cir. 1994) (observing, in case requiring transportation of incarcerated witnesses, that "the costs associated with a delay in proceeding with a trial are likely to be more burdensome than those occasioned by delays in discovery," and "[c]onsequently, it is not unreasonable to treat a failure to attend trial more severely than a failure to comply with discovery orders in a timely fashion").

Finally, while the district court did not, at least on the record, carefully balance the need to alleviate court calendar congestion against plaintiff's right to his day in court, nor assess the efficacy of lesser sanctions, it is not clear how these final two factors would be weighed in this case. Defense counsel did propose one compromise solution – housing Lewis in Great Meadow's SHU during trial, where his safety could be monitored by video – that Lewis rejected. No party suggested that Lewis's evidence might be offered in a form other than live testimony, see generally Muhammad v. Warden, Baltimore City Jail, 849 F.2d

25

107, 111-13 (4th Cir. 1988) (discussing potential alternatives where inmate-plaintiff cannot be present at trial),[15] nor does such a possibility seem likely given the critical need for a jury to assess his credibility, see id. at 111 (observing that where credibility assessment is critical "[n]ot only the appearance but the reality of justice is obviously threatened by [inmate witness's] absence"); see also Stone v. Morris, 546 F.2d 730, 736 (7th Cir. 1976) (discussing factors relevant to determining whether inmate-plaintiff should be permitted to testify in person, including "whether . . . the prisoner is the only person who can render testimony consistent with the allegations of his complaint").[16] Accordingly, we view these two factors as neutral, neither supporting nor undermining the challenged dismissal decision.

Thus, although we do not think the Drake factors are particularly useful to our analysis of the dismissal judgment in this case, because three of those factors support the dismissal, while two of the factors are neutral, we conclude that, even on such review, the judgment should be affirmed.

### III.    Conclusion

To summarize, we conclude as follows:

(1)  The challenged judgment of dismissal for failure to prosecute pursuant to Fed. R. Civ. P. 41(b), entered after the jury was sworn, is properly reviewed by considering (a) the

---

[15] In any event, arranging for such an alternative might itself have necessitated a delay similar to that required to grant an adjournment and transfer.

[16] These cases consider the question of how a court should determine whether to permit an inmate-plaintiff to be present at trial, and not how to address an inmate-plaintiff's refusal to testify when he has been permitted to appear and the day of trial has arrived, a scenario raising different concerns.

district court's refusal to grant an adjournment and transfer of the case; and (b) the district court's decision to dismiss the case with prejudice when plaintiff, upon failing to secure the requested adjournment and transfer, refused to testify at trial.

(2) The district court acted within its discretion in denying adjournment and transfer where plaintiff (a) failed to demonstrate that his subjective concerns about detention at Great Meadow were also objectively reasonable and not adequately accommodated by placement in the Great Meadow SHU; and (b) should have recognized and raised his concerns about Great Meadow detention long before the jury was sworn.

(3) The district court similarly acted within its discretion in dismissing plaintiff's case with prejudice when, upon failing to secure the requested adjournment and transfer of his trial, he refused to adduce the only direct evidence supporting his claim, i.e., his own testimony.

(4) Because three of the factors identified in United States ex rel. Drake v. Norden Sys., Inc., 375 F.3d 248, 254 (2d Cir. 2004) also support dismissal, while two are neutral, the district court's judgment must be affirmed even on such analysis.

The judgment of the district court is therefore AFFIRMED.

27

BERMAN, District Judge, dissenting:

I respectfully dissent because I believe that the district court improperly denied Lewis his day in court. See Truax v. Corrigan, 257 U.S. 312, 332 (1921) ("[t]he due process clause requires that every man shall have the protection of his day in court"); Sokol Holdings, Inc. v. BMB Munai, Inc., 542 F.3d 354, 358 (2d Cir. 2008) ("It is a fundamental principle of American law that every person is entitled to his or her day in court.") (quoting Tice v. Am. Airlines, Inc., 162 F.3d 966, 968 (7th Cir. 1998)); see also Holt v. Pitts, 619 F.2d 558, 561–62 (6th Cir. 1980) ("[W]hen an inmate's civil action reaches the trial stage, and his claim proves sufficiently meritorious to survive motions for dismissal and summary judgment, a court must then take all reasonable steps necessary to insure that the inmate receives the fair 'day in court' to which he is entitled.").[1]

Lewis alleges in this civil action for damages that he was physically and sexually assaulted by a number of New York State Department of Corrections officers upon arriving at Great Meadow Correctional Facility ("Great Meadow") on or about May 30, 1990, and while wearing "body restraints." (Am. Compl., dated June 1, 1992.) The case was filed on June 10, 1991 and finally brought to trial on June 21, 2005, i.e., over fourteen years after it was commenced.[2]

_____

[1]    The majority's references to Lewis's past criminal behavior are, most respectfully, largely irrelevant to this analysis. (See Majority Op. at 3 & n.2, 6, 17, 18 & n.11); see also Saperstein v. Palestinian Auth., No. 04 Civ. 20225, 2008 WL 4467535, at *16 (S.D. Fla. Sept. 29, 2008) ("Our system is respected because all litigants, even unpopular ones, have the right to their day in court and all litigants are entitled to equal justice under our laws without sympathy or prejudice for either side.").

[2]    The docket reflects that from the time the case was filed in 1991 through June 21, 2005, Lewis actively prosecuted his claims, including discovery and summary judgment proceedings. See Alvarez v. Simmons Mkt. Research Bureau, Inc., 839 F.2d 930, 932 (2d Cir. 1988); Romandette v. Weetabix Co., 807 F.2d 309, 312 (2d Cir. 1986). On at least three occasions,

28

As the majority indicates, at approximately 10:00 a.m. on the first day of trial, Lewis's counsel advised Lewis that during the trial he would be housed at Great Meadow, "the facility where the alleged assaults had occurred and where certain of the defendants were still employed." Majority Op. at 5; see Appellant's Supp. Br., dated Aug. 6, 2008, at 1. By 11:48 a.m., Lewis had raised with the district court through counsel his concern "about testifying particularly against the defendants who are now assigned to Great Meadow[.]" (Trial Tr. at 13.) By 12:12 p.m., Lewis's case was dismissed with prejudice. (Id. at 17.)[3]

Upon hearing Lewis's concerns on the morning of June 21, 2005, the Assistant State Attorney General defending the case stated that he could "try[] to arrange a new facility" at which Lewis could be housed during trial but also noted that he could not "do that at the moment." (Trial Tr. at 14.)[4] Shortly after 12:00 p.m., the district court stated that it could "understand [Lewis's] discomfort," and, upon confirming that certain of the defendants were in fact still assigned to Great Meadow, the district court (not Lewis) sua sponte raised the option of adjournment. (Id. at 15.)[5] "[T]he other choice [is] to adjourn this trial for about a few weeks or a

Lewis applied to the district court for a trial date. (A 16. Nos. 110, 111; A. 28 No. 165.)

[3]     As the majority notes, "[i]n his supplemental submission to this court, Lewis asserts that [trial counsel] informed the district court 'before jury selection that the plaintiff was in fear of his life from the defendants . . . and would not allow himself to be transferred back to Great Meadow without a court order of protection.'" (Majority Op. at 7 n.6 (quoting Appellant's Supp. Br. at 1).)

[4]     The Assistant State Attorney General also suggested that Lewis be placed in the Special Housing Unit ("SHU") at Great Meadow during trial, presumably so that cameras could monitor Lewis and his jailers twenty-four hours a day. Lewis declined stating that SHU "was where some of the incidents [in question] . . . took place." (Id. at 17.)

[5]     THE COURT: "[A]re there particular defendants here who are still assigned to that facility [Great Meadow]?" MR. SCHWARTZ: "Yes, your Honor." (Id.)

29

month" and "the case can be tried in Syracuse for a few days," which would have allowed Lewis to avoid being housed at Great Meadow during his trial. (Id.)

At approximately 12:10 p.m., Lewis's trial counsel stated to the district court that Lewis "fears for his life if he's ever brought back to [Great Meadow]" and that Lewis's "preference would be to have this trial adjourned and then rescheduled to be tried out in Syracuse." (Id. at 16.) Lewis's counsel made clear that Lewis was "not . . . agreeing to . . . a dismissal, and he's not requesting that." (Id. at 17.)

In dismissing Lewis's case with prejudice shortly before 12:12 p.m., the district court appears not to have conducted any hearing, for example, regarding Lewis's claim of possible reprisals. The rationale offered for the district court's decision appears to be that "the plaintiff has no right to select the facility he's going to stay at during the two or three-day trial" and "[t]here's a presumption that any facility he's staying at, he's going to be treated properly and lawfully." (Id. at 14, 15.)

Unlike the majority, I believe that in reviewing the district court's decision to dismiss this case with prejudice, we should apply the factors set forth in United States ex rel. Drake v. Norden Sys., Inc., 375 F.3d 248, 254 (2d Cir. 2004). See id. ("[W]e review the trial court's decision [to dismiss for failure to prosecute] by examining whether: (1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions."). The conclusion I draw easily from such analysis is that this is "not one of those rare

occasions when the drastic remedy of dismissal was warranted." Colon v. Mack, 56 F.3d 5, 7 (2d Cir. 1995) (internal quotations and citations omitted).

First, it is clear that, but for the fact that he learned on the morning of trial that he would be housed at Great Meadow, Lewis was prepared to testify at trial. See Peterson v. Term Taxi, Inc., 429 F.2d 888, 890–91 (2d Cir. 1970) (per curiam). A relatively brief postponement of the trial (at most "a few weeks or a month," as suggested sua sponte by the court below) would have been an inconsequential delay in the fourteen-year history of this case. See LeSane v. Hall's Sec. Analyst, Inc., 239 F.3d 206, 210 (2d Cir. 2001); Lucas v. Miles, 84 F.3d 532, 535 (2d Cir. 1996); see also Francis v. Morganthau, No. 97 Civ. 5348, 1998 WL 226186, at *2 (S.D.N.Y. May 4, 1998).

Second, Lewis's case was dismissed without any clear advance warning, i.e., unless one concludes that less than 12 minutes notice on the first day of trial is sufficient. Shortly after 12:00 p.m., the district court stated, "If there's no other solution, I would dismiss the case and certainly preserve [Lewis's] right to appeal." (Trial Tr. at 15); see LeSane, 239 F.3d at 210. That is what occurred approximately 12 minutes later. (See Trial Tr. at 17.) But, in fact, it was not until the district court actually dismissed the case shortly before 12:12 p.m. that it notified Lewis that dismissal would be "with prejudice." (Id. ("Okay. The Court is going to grant [defendants'] motion and dismiss the case, with prejudice.").)[6]

Third, any inconvenience to the defendants and/or costs incurred by the State of New York in postponing the trial would have been insignificant and not "specially burdensome," LeSane, 239 F.3d at 210, particularly compared to the harm to Lewis in being barred from

---

[6]     When the district court raised the possibility of briefly adjourning the trial, the Assistant State Attorney General stated, "it's Mr. Lewis's option if he wishes not to testify and proceed with trial, I would submit that the case be dismissed." (Id. at 15.)

31

presenting his case, see Webber v. Eye Corp., 721 F.2d 1067, 1071 (7th Cir. 1983) (per curiam). "[I]n cases where delay is more moderate or excusable, the need to show actual prejudice is proportionally greater[.]" Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 43 (2d Cir. 1982); see also Romandette, 807 F.2d at 312.

Fourth, the trial in this case was scheduled to last no more than three days. Absent any "evidence of an extreme effect on court congestion," Lewis's right to be heard should not have been "subrogated to the convenience of the court." Lucas, 84 F.3d at 535–36; see Coats v. Dep't of Veteran Affairs, 268 Fed. Appx. 125, 127 (2d Cir. 2008); see also Freed v. Braniff Airways, Inc., 119 F.R.D. 10, 11 (S.D.N.Y. 1987). The district court, as noted, acknowledged sua sponte that it could "understand [Lewis's] discomfort," and that it could "adjourn this trial for about a few weeks or a month" and "the case can be tried in Syracuse for a few days." (Trial Tr. at 15.) In these circumstances, Lewis's concerns "cannot be dismissed out of hand" as subjective or unreasonable. Colon, 56 F.3d at 7; see also Merker v. Rice, 649 F.2d 171, 174–75 (2d Cir. 1981).

Fifth, the district court did not explain why it abandoned the alternatives of adjourning the trial for "about a few weeks or a month," or moving the proceedings to Syracuse, or having the Assistant State Attorney General further explore alternative housing. (Trial Tr. at 14–15); see Martens v. Thomann, 273 F.3d 159, 182 (2d Cir. 2001); Spencer v. Doe, 139 F.3d 107, 113 (2d Cir. 1998); Colon, 56 F.3d at 7. Nor does the record reveal why the district court failed to consider other practical alternatives to dismissal, e.g., "that Lewis's evidence might be offered in a form other than live testimony." (Majority Op. at 25); see Muhammad v. Warden, Baltimore

32

<u>City Jail</u>, 849 F.2d 107, 113 (4th Cir. 1988); <u>see also</u> <u>Sokol Holdings</u>, 542 F.3d at 358; <u>Holt</u>, 619 F.2d at 561–62; <u>Hernandez v. Whiting</u>, 881 F.2d 768, 771 (9th Cir. 1989).

Rather than relying upon <u>Drake</u>, the majority appears to create a new standard of analysis for this case: "The challenged judgment of dismissal for failure to prosecute pursuant to Fed. R. Civ. P. 41(b), entered after the jury was sworn, is properly reviewed by considering (a) the district court's failure to grant an adjournment and transfer of the case; and (b) the district court's decision to dismiss the case with prejudice when plaintiff, upon failing to secure the requested adjournment and transfer, refused to testify at trial." (Majority Op. at 26–27.) I believe that this is an unnecessary "reach" and that this case is purely and simply about a dismissal because Lewis refused to testify at trial out of fear of reprisals. The <u>Drake</u> factors serve as "guiding rules that limit a trial court's discretion in this context out of recognition . . . that dismissal for failure to prosecute is a harsh remedy to be utilized only in extreme situations." <u>Drake</u>, 375 F.3d at 254 (internal quotations and citation omitted). If, as the majority posits, "a district court may dismiss a case under Rule 41(b) when the plaintiff refuses to go forward with a properly scheduled trial," (Majority Op. at 19 (citation omitted)), there is every reason that the <u>Drake</u> factors should be considered. <u>See</u> <u>Scott v. Perkins</u>, 150 Fed. Appx. 30 (2d Cir. 2005).[7]

For the foregoing reasons, I respectfully dissent.

---

[7] The decision by summary order in <u>Scott</u> is cited solely to identify a case with similar facts in which this Court applied the <u>Drake</u> factors. The <u>Scott</u> decision is not cited as precedent. <u>See</u> Local Rules of the Second Circuit Relating to the Organization of the Court § 32.1; <u>see also</u>, e.g., <u>Franceskin v. Credit Suisse</u>, 214 F.3d 253, 256 n.1 (2d Cir. 2000) ("Here and elsewhere in this opinion, we cite to cases decided by summary order solely to identify instances in which diversity jurisdiction was improperly alleged in matters coming before this court. We cite them only as facts rather than as precedents.").